**Geneva GRAY, Administratrix of the Estate of Roy A. Gray, Deceased, Plaintiff-Appellant,**

v.

**L. J. NAVY TRUCKING COMPANY, INC., Defendant-Appellee.**

No. 72-1522.

United States Court of Appeals, Sixth Circuit.

Argued Nov. 29, 1972.

Decided March 28, 1973.

Charles E. Brant, Columbus, Ohio, for plaintiff-appellant; John Wolfe, Moore, Wolfe & Boll, Ironton, Ohio, Glander, Brant, Ledman & Newman, Columbus, Ohio, on brief.

Robert L. Summers, Hamilton, Kramer, Myers & Summers, Columbus, Ohio, on brief, for defendant-appellee.

Before PHILLIPS, Chief Judge, and PECK and LIVELY, Circuit Judges.

PECK, Circuit Judge.

This is an appeal from a jury verdict in a wrongful death action. The uncontested facts show that the appellant's husband, Roy Gray, was killed when his automobile struck the appellee's tractor-semitrailer in June of 1966. As Gray was proceeding south on the west side of U.S. Route 23, Rufus Sifford drove the appellee's truck out of a restaurant parking area and across the two northbound lanes and into the southbound lanes. It was at this point that Gray's Volkswagen struck the front of the right rear set of wheels of the trailer; Sifford and his helper in the cab were uninjured, and Gray died instantly.

The appellant then brought this wrongful death action, to which the defendant trucking company interposed a contributory negligence defense, alleging and attempting to prove that the accident was Gray's fault because he was driving without headlights and because he was driving while intoxicated. In support of its contention that Gray was driving while intoxicated, the appellee offered three documentary exhibits, each of which was admitted into evidence under the Federal Business Records Act, 28 U.S.C. § 1732(a), "for all purposes," and the plaintiff has appealed from that order. Appeal is also taken from the ruling of the District Court allowing the introduction of a deposition in which the investigating officer stated his opinion that the cause of the accident was Mr. Gray's driving while intoxicated.

The first contested document is a laboratory report from Mercy Hospital which states that the blood alcohol con-

tent of the tested blood was 459 mg. per 100 cc's of blood. The appellant contends that this report is inadmissible under the Federal Business Records Act because the defense did not show that the blood tested was Gray's, the procedure used in taking the blood sample, the manner of making the test, nor the chain of custody of the sample.

 Common law provided that out of court statements contained in business records would be inadmissible over a hearsay objection. However, it was soon recognized that records kept in the ordinary course of business are usually accurate and reliable, and an exception to the hearsay rule was developed, the most burdensome feature of which was the requirement that each participant in the making of the record, whether entrant or informant, be produced or at least be identified as unavailable to verify the records. McCormick, Evidence, § 289. This aspect of the exception was dealt with by the adoption of what is now the Federal Business Records Act, which eliminated the requirement that the maker of the record verify its authenticity. Schmeller v. United States, 143 F.2d 544, 550 (6th Cir. 1944). The legislative history of the Act indicates that the intention of the drafters was not to make admissible otherwise incompetent or irrelevant evidence merely because such evidence appeared in a record made in the regular course of business, Gordon v. Robinson, 210 F.2d 192, 196 (3d Cir. 1954), but only to "facilitate admission of records which experience has shown to be quite trustworthy." Palmer v. Hoffman, 318 U.S. 109, 113, 63 S.Ct. 477, 480, 87 L.Ed. 645 (1943).

 Since the Act is an exception to the hearsay rule, it would seem that it should not serve to cure any nonhearsay defects, such as relevancy or competency. However, an examination of the leading cases indicates that the courts are in irreconcilable conflict over the issue of whether the Act serves to cure more than mere hearsay defects related to the making of the business entry. For example, Thomas v. Hogan, 308 F.

2d 355 (4th Cir. 1962) held that the Act presumes that diagnoses and scientific tests have been properly made by qualified personnel, and that the qualifications of the diagnostician and the procedures involved in running the test and the chain of custody of the samples need not be established. Schmeller v. United States, supra, held that the competency of records admitted under this Act must be otherwise established. The conclusion of the major commentators is in accord with prior holdings of this Court that the Act should be interpreted as abolishing only the requirement that the one who records the entry on the reports of others need have knowledge of the facts himself. E. g., McCormick, Evidence, § 286 (1954); 5 Wigmore, Evidence, § 1424 (3d Ed. 1940); Jones, Evidence, § 12:11 (6th Ed. 1972).

 The appellee relies upon Thomas v. Hogan, supra, which held that the results of a blood test were admissible under the Act. While we note that the Fourth Circuit observed that the Sixth Circuit had already reached a contrary result in Baltimore & Ohio R. R. v. O'Neill, 211 F.2d 190 (6th Cir.), reversed on other grounds, 348 U.S. 956, 75 S.Ct. 447, 99 L.Ed. 747 (1954), we think that the facts of Thomas differ substantially from those of this case. In Thomas, the attending physician, having been qualified as an expert witness, identified the test as a relatively simple, commonly performed scientific procedure. He testified concerning the extraction of the blood sample and the required laboratory procedures, and that he himself had made the final determination concerning the blood alcohol ratio. Similar facts are notably lacking in this case. For example, there is no evidence to qualify the test as scientifically acceptable or validly performed; nor was this an entry taken from the regular records of the hospital concerning a patient. The test was not performed in the regular course of patient treatment, but on a specimen of blood brought into the hospital under circumstances which were not established. The consequent report of the results of this test simply

do not rise to the level of a business record. In Taylor v. B. Heller & Co., 364 F.2d 608 (6th Cir. 1966), this Court held that records sought to be admitted under this Act must be shown to be the product of the ordinary routine of business. Since the exception to the hearsay rule is predicated upon the reliability of such routine, this showing is critical and indispensible.

■ The appellee contends that the Act eliminates the necessity of establishing the propriety of the test, since the Act presumes the laboratory procedure to be competent. Such a presumption is not consistent with the purposes of the Act. In Wheeler v. United States, 93 U.S.App.D.C. 159, 211 F.2d 19 (1953), certain slides used in a laboratory analysis were held to have been properly received only after a showing that they were of the type normally used in a procedure regularly followed by the hospital, and that proper methods of analysis were used which were free from error. Entries made as regular routine matters in laboratory notebooks cannot act to prove themselves merely upon a showing by the recorder that he made the entry. Teter v. Kearby, 169 F.2d 808, 816–817, 36 CCPA 706 (1948). In this case, not only was no showing made concerning the testing procedures, but no showing has been made concerning the precautions, if any, taken between the taking of the blood sample at the scene of the accident and its course of travel to the hospital laboratory. The regularity of the making of the entry of the results of the blood test cannot in bootstrap manner serve as a presumption that the blood was properly taken from the decedent and properly transferred to the hospital.

"The legislative history of the Business Records Act clearly shows that it was not the intent of the draftsmen to make admissible all evidence, no matter how incompetent or irrelevant, merely by virtue of the fact that it appeared in a record made in the regular course of business." Gordon v. Robinson, 210 F.2d at 196.

In admitting the hospital report, the District Court failed to insist upon a showing of relevance and competence, and the obvious prejudicial effect of this ruling alone would require reversal, even if the error had not been compounded by the admission of this report in two different forms, as hereinafter discussed.

■ The District Court's order also admitted a coroner's report which contained the following entry:

"16 June 66-Report received from Mercy Hospital Portsmouth, Clinical Lab on specimen of blood of Mr. Gray sent by me by State Patrolman Baughman. Test requested-Blood alcohol. Result: 459 mg ethyl alchol [sic] per 100 cc blood.

Paul Jones, M.D."

This entry incorporates the blood test report discussed above, and is as inadmissible as is the original report. If we must reject the report itself as incompetent, we cannot permit its admission because it is contained in another report.

■ This coroner's report also contains statements from the truck operator and the relief driver concerning their observations just prior to the accident. These witnesses testified at trial, and there appears to be no reason why these statements should have been admitted in hearsay form. A misplaced reliance on the Federal Business Records Act does not serve as a substitute for essential elements of competency.

■ The District Court's order also admitted the report of the investigating Highway Patrolman. This report also contained a hearsay reference to the blood test; as noted above, a reference to the Federal Business Records Act does not serve to make such hearsay evidence admissible. The report also contained the entry: "Coroner Jones stated this test indicated intoxication." The obvious problems created by this kind of triple hearsay do not require further discussion in light of our conclusions concerning the other two documents. The testimony of the Patrolman which would be admissible would in-

clude only his personal observations from his arrival on the scene of the accident about forty minutes thereafter, and the conclusions which, as an expert in the field of accident investigation, he might draw therefrom. Such observations could not, of course, include the amount of alcohol in the decedent's blood.

In summary, the contents of the three reports under consideration constitute opinions, conclusions and conjecture which would only be admissible directly from a witness after a proper foundation has been laid; they do not become automatically admissible simply because they have been written down in an official report.

█ In 1944, this Court held that the "Shop Book Act," the precursor of the present Act, was enacted for the purpose of eliminating the technical requirement of proving the authenticity of business records and memoranda by the testimony of the maker.

> "The mere fact that the page offered in evidence is taken from a business file and is otherwise proved in compliance with § 695 does not establish its competency. . . . Section 695 in no way repealed the ordinary requirements of relevancy and competency. The District Court . . . should have excluded the hearsay and other incompetent evidence." Schmeller v. United States, 143 F.2d at 550.

The hearsay portions of these exhibits can easily be deleted by the District Court; the ruling that these exhibits should be admitted in full and for all purposes was unnecessarily inclusive.

█ An appeal is also taken from the admission over objection of the patrolman's opinion as to the cause of the accident. When asked on deposition as to his opinion as to the cause of the accident, based upon his observations of the scene of the accident and the facts uncovered during his investigation, the patrolman stated that the main cause of the accident was that the decedent was driving without his headlights and while

under the influence of alcohol. The law of Ohio is that an expert witness is permitted to express his opinion as to the ultimate fact in issue only when the fact to be determined by the jury depends upon the interpretation of scientific facts which are beyond the experience, knowledge or comprehension of the jury. McKay Machine Co. v. Rodman, 11 Ohio St.2d 77, 228 N.E.2d 304 (1967); Dickerson v. Shepard Warner Elevator Co., 287 F.2d 255 (6th Cir. 1961); Shepherd v. Midland, 152 Ohio St. 6, 87 N.E.2d 156 (1949). In addition, Ohio law does not permit an expert opinion to be based upon the opinion of others, either in evidence or not in evidence. Zelenka v. Industrial Comm'n., 165 Ohio St. 587, 138 N.E.2d 667 (1956); see also: Taylor v. B. Heller & Co., *supra.* This opinion, based upon the hearsay opinion of intoxication of the coroner's, which itself was based upon the results of a blood test which was not properly admitted should have been excluded from the patrolman's deposition when it was read to the jury.

The judgment of the District Court is reversed, and the cause is remanded for further proceedings consistent with this opinion.