NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2016 VT 33

No. 2015-086

| | |
|---|---|
| Unifund CCR Partners | Supreme Court |
| | |
| | On Appeal from |
| v. | Superior Court, Windham Unit, |
| | Civil Division |
| | |
| Daniel Zimmer | October Term, 2015 |

John P. Wesley, J.

Nicole A. Killoran of Bauer Gravel Farnham, Colchester, and Alan H. Abes and Elizabeth M. Shaffer of Dinsmore & Shohl LLP, Cincinnati, Ohio, for Plaintiff-Appellant.

C. Creek Kelsey of Law in the Public Interest, L³C, Thetford Center, for Defendant-Appellee.

PRESENT: Reiber, C.J., Dooley, Skoglund, Robinson and Eaton, JJ.

¶ 1. **EATON, J.** In this appeal, Unifund CCR Partners (Unifund), the alleged assignee of charged-off debt owed by defendant under a credit card account opened with AT&T Universal/Citibank (Citibank), challenges the trial court's decision entering judgment in favor of defendant in an action for collection. For the reasons stated herein, we affirm.

¶ 2. Unifund, a debt buyer, is in the business of purchasing large portfolios of charged-off debts from original debt holders in the hope of eventually collecting from the

original debtors.[1]  On October 25, 2013, Unifund asserted the right to judgment against defendant for charged-off debt in the amount of $2453.22, plus costs and statutory pre-judgment interest of 12% under 12 V.S.A. § 2903, for a credit card account opened in defendant's name with Citibank.  Unifund also alleged that defendant was unjustly enriched in that amount "by virtue of non-payment on an account."

¶ 3.    At trial, Unifund asserted that it was authorized to collect the debt by a series of limited assignments, from Citibank to Pilot Receivables Management, LLC (Pilot) on June 18, 2012, and from Pilot to Unifund CCR LLC (UCL) and UCL to Unifund, both on June 1, 2013. To establish standing to enforce the underlying debt, Unifund offered testimony of Brian Billings, who spoke in support of the assignment from Citibank to Pilot, and Elizabeth Andres, who spoke in support of the assignments from Pilot to UCL and UCL to Unifund.

¶ 4.    The trial court found these documents to be inadmissible as hearsay because Unifund had failed to establish the necessary foundation for their admission.  Specifically, the trial court found that although Mr. Billings and Ms. Andres testified to having been designated as custodians of records within their respective business organizations, neither knew anything about the assignments outside their review in preparation for litigation.  Because "[n]either had sufficient association with the transaction to offer a credible opinion that the information contained in the electronic data was 'made at or near the time [of its creation] by, or from information transmitted by, a person with knowledge,' " the trial court was unable to conclude that either Mr. Billings or Ms. Andres was qualified to authenticate the documents as business records under Vermont Rule of Evidence 803(6).

---

[1]  For a more thorough discussion of the debt buying industry, see Fed. Trade Comm'n, The Structure and Practices of the Debt Buying Industry (2013), https://www.ftc.gov/ reports/structure-practices-debt-buying-industry [https://perma.cc/A4P6-G2XX].

¶ 5.     Furthermore, the trial court found Ms. Andres' testimony as to the assignments from Pilot to UCL and UCL to Unifund to be particularly difficult to credit.  Specifically, the trial court found it troubling that, although she claimed to have the custodial qualifications on behalf of both assignor and assignee, Ms. Andres was unable to reconcile significant inconsistencies between the copy of the assignment from UCL to Unifund that was attached to the complaint and the copy produced at trial.  Although the documents were dated the same day, they had different signatories—the document included with the complaint was signed by Morgan Smith and Autumn Hopkins, whereas the document produced at trial was signed by Jessica Stevens and Autumn Bloom.  Despite testimony from Ms. Andres that Autumn Hopkins and Autumn Bloom were the same person who had recently been married, the trial court found that this did not explain why Ms. Hopkins/Bloom used different last names in signatures made on the same day, nor did it explain why Morgan Smith's signature appears on one version while Jessica Steven's signature appears on another.  The trial court found that these unexplained inconsistencies threw into question the chain of ownership of the account subject to the complaint for collection.

¶ 6.     The trial court also found that, even if the assignments were admissible as a business record under Rule 803(6), Unifund had failed to establish standing.  The trial court reasoned that the documents proffered as assignments, each of which contained the same language, transferred the right in receivables for collection purposes only, and not title.[2]  Without an ownership interest, the trial court found that Unifund had no cognizable interest in the account, and thus, no standing to raise claims regarding the account.

---

[2] As provided by the assignments themselves, the assignor " 'transfer[red] and assign[ed] to assignee all of assignor's rights in the receivables, for collection purposes only,' " and the " '[a]ssignor shall retain title and ownership of such receivables.' "

¶ 7. The trial court further noted that, regardless of whether the assignments were admissible or Unifund had standing, Unifund had failed to demonstrate that there ever was a contract between Citibank and defendant, or the terms of any such contract. The trial court was satisfied by testimony from both defendant and his father that it was father, and not defendant, who applied for the credit card in defendant's name, without defendant's knowledge or authority, and father who was responsible for nearly all of the charges attributed to the account. The trial court considered evidence that account statements were sent to father's home address in New Jersey and that father paid those statements until financial difficulties prevented him from doing so. Although the trial court acknowledged that defendant, who lived in Vermont, used the credit card "for a few purchases," it did not find those purchases, together with defendant's acknowledgement that he noticed that the card was in his name, to be sufficient to support the inference of a contractual relationship between Citibank and defendant for every charge attributed to the credit card. Further, the trial court found the Citibank Card Agreement to be general and incomplete as to the nature of the interest rate, and the inclusion of some, but not all, of Citibank's billing statements, raised questions as to the reliability of the debt owed at the time of charge off.

¶ 8. Finally, the trial court found that Unifund failed to support its theory of recovery under quasi contract or unjust enrichment because its proofs were all related to its contract claim. The trial court concluded by finding that any claim that defendant was unjustly enriched in the amount of the outstanding balance was "wholly at odds with the evidence that most of the purchases charged to the card were made by his father." For these reasons, the trial court entered judgment for defendant on Unifund's complaint.

¶ 9. Unifund raises four arguments on appeal: (1) that documents proffered to establish the assignment of defendant's debt were not inadmissible as business records; (2) that the assignment of the right to collect is itself sufficient for standing; (3) that Unifund sufficiently established the terms of the contract between defendant and Citibank, including the contractual interest rate; and (4) that Unifund demonstrated a basis to recover for unjust enrichment.

¶ 10. Our standard of review is two-tiered. We are deferential to a trial court's findings of fact, and will uphold them unless clearly erroneous. Clayton v. Clayton Invs., Inc., 2007 VT 38A, ¶ 9, 182 Vt. 541, 929 A.2d 713 (mem.); see also V.R.C.P. 52(a)(2); Mann v. Levin, 2004 VT 100, ¶ 17, 177 Vt. 261, 861 A.2d 1138 ("[W]e will uphold the court's factual findings unless, taking the evidence in the light most favorable to the prevailing party, and excluding the effect of modifying evidence, there is no reasonable or credible evidence to support them."). We review the trial court's legal conclusions de novo, and will uphold them if reasonably supported by the findings. Id. (citing Luneau v. Peerless Ins. Co., 170 Vt. 442, 444-45, 750 A.2d 1031, 1033 (2000)).

## I. Contractual Claim

¶ 11. Unifund challenges the trial court's finding that the evidence was insufficient to establish a valid and enforceable agreement between Citibank and defendant as a matter of law. To prevail on the contractual claim requires sufficient evidence to support a finding that defendant was party to a contract with Citibank, that he defaulted on a contractual debt by failing to make payments, that there was an established amount due and owing, and that there was a complete chain of assignment from the original creditor (Citibank) to the current debt holder (Unifund), conferring standing upon the debt holder to seek collection.

5

¶ 12.	We begin with Unifund's challenge to the trial court's evidentiary ruling. Unifund argues that the trial court should have admitted the documents purporting to assign defendant's account from Citibank to Unifund as business records under V.R.E. 803(6). Specifically, Unifund contends that the trial court applied the incorrect legal standard for business records by requiring Unifund's witnesses to have an "association with the transaction," resulting in the wrongful exclusion of the alleged assignments and account documents.

¶ 13.	Under Rule 803(6), admission of a document as a business record requires testimony of the custodian or other qualified witness (1) that the record is "kept in the course of regularly conducted business activity," (2) that it was "made at or near the time by, or from information transmitted by, a person with knowledge," and (3) that it "was the regular practice of that business activity to make" the record. As a caveat, Rule 803(6) precludes admission where "the source of information or the method or circumstances of preparation indicate lack of trustworthiness." Id.

¶ 14.	The purpose of the business record exception is to permit the admission of reliable and accurate records, not to facilitate the introduction of otherwise incompetent evidence merely because it appeared in a record made in the regular course of business. See Gray v. L.J. Navy Trucking Co., Inc., 475 F.2d 545, 548 (6th Cir. 1978). For this reason, Rule 803 recognizes an exception for business records that have been deemed by the trial court to be trustworthy. See Reporter's Notes, V.R.E. 803. This trustworthiness is guaranteed by the regularity with which the records are made, the actual reliance placed on them in human affairs, and the duty of the recorder to make an accurate record. Id. Thus, the foundation to the hearsay exception in Rule 803(6) is the trustworthiness of the records, and where the source of the information or the method or circumstances of preparation indicate a lack of trustworthiness, it is

within the trial court's discretion to exclude those business records. See Dufresne-Henry Eng'g Corp. v. Gilcris Enters., Inc., 136 Vt. 274, 276-77, 388 A.2d 416, 418 (1978) (upholding decision not to admit business record where testimony did not establish reliability); Colonial Plumbing Corp. v. Solar Heating Inc., 133 Vt. 82, 83, 329 A.2d 638, 640 (1974) (characterizing language in Rule 803(6) as requiring admission "unless the trial court, after examining the records and the manner of their preparation, entertains serious doubt as to their dependability and being worthy of confidence").

¶ 15.    A trial court's discretionary rulings are examined under an abuse of discretion standard of review, which "requires a showing that the trial court has withheld its discretion entirely or that it was exercised for clearly untenable reasons or to a clearly untenable extent." Vt. Nat'l Bank v. Clark, 156 Vt. 143, 145, 588 A.2d 621, 622 (1991).  At trial, Unifund sought to admit, as its own business records, documents purporting to assign defendant's account with Citibank to Unifund, including the alleged assignments from Citibank to Pilot, Pilot to UCL, and UCL to Unifund.  The trial court found Mr. Billings' and Ms. Andres' testimony about these documents to be untrustworthy, explaining that neither had "sufficient association with the [assignments] to offer a credible opinion that the information contained in the electronic data was 'made at or near the time [of its creation] by, or from information transmitted by, a person with knowledge.' "   See V.R.E. 803(6).  In particular, the trial court found Ms. Andres' testimony regarding the assignments from Pilot to UCL, and UCL to Unifund, difficult to credit, noting that when confronted with inconsistencies between the version of the assignment from UCL to Unifund attached to the initial complaint and the version produced at trial, Ms. Andres was unable to reconcile the discrepancies between the two.

¶ 16.    The trial court found it prudent to exercise caution and to demand sufficiently documented proof of defendant's indebtedness to Unifund.  Other courts have noted that "the possibility of a debt collector attempting to collect a debt that it does not actually own, either through assignment or otherwise, is very real."  Webb v. Midland Credit Mgmt. Inc., No. 11C5111, 2012 WL 2022013, at *5 n.8 (N.D. Ill. May 31, 2012) (citing P. Holland, The One Hundred Billion Dollar Problem in Small Claims Court: Robo-Signing and Lack of Proof in Debt Buyer Cases, 6 J. Bus. & Tech. L. 259, 279 (2011).  We need not decide whether the trial court abused its discretion in concluding that the evidence was insufficient to support the admission of the Citibank to Pilot assignment.  Given the significant inconsistencies between the copy of the assignment from UCL to Unifund attached to the complaint and the one produced at trial, and Unifund's witnesses' inability to reconcile the discrepancy, the trial court was clearly within its discretion in concluding that the documents purporting to assign the account from Pilot to UCL, and UCL to Unifund, were sufficiently unreliable to be admitted under the business records exception.  Because the trial court was within its discretion in finding the proffered documents unreliable due to their questionable chain of title, as a result of the uncertainties expressed by the witnesses, Unifund has not established the existence of any valid assignment empowering them to bring this collection action.  See, e.g., Owens-Illinois, Inc. v. Armstrong, 604 A.2d 47, 50-51 (Md. 1992) (despite meeting general requirements of business record, asbestos exposure report properly excluded based on combination of factors indicating lack of trustworthiness).

¶ 17.    Unifund also challenges the trial court's finding regarding standing, as established by the alleged assignments.  The trial court found Unifund's effort to establish standing to be insufficient because the assignments from Citibank, Pilot, and UCL were for collection purposes

only, reserving title and ownership over the receivables to the assignor, Citibank. The question is thus presented whether the documents, if admissible, are sufficient to confer standing upon Unifund to bring the claim, despite the express reservation of title and ownership in Citibank. Because we affirm the trial court's finding that the documents concerning the alleged assignments, whatever their scope, are unreliable and therefore inadmissible hearsay, we decline to address whether, had they been admitted, the documents were sufficient to convey standing to Unifund. Further, because we affirm the trial court's finding that Unifund has failed to establish a complete chain of assignment from the original creditor (Citibank) to the current debt holder (Unifund), we also find no need to reach Unifund's challenge to the trial court's finding that the evidence was insufficient to establish a valid and enforceable agreement between Citibank and defendant as a matter of law.[3] If the basis for a claim concerning collection of the debt against defendant existed, Unifund has not established it was the entity entitled to bring it.

## II. Unjust Enrichment

¶ 18.  Unifund also argues that the trial court erred in finding that Unifund failed to demonstrate a basis for recovery for unjust enrichment. Specifically, Unifund contends that it is entitled to payment from defendant for the purchases he personally made on the credit card account because defendant was unjustly enriched at Unifund's expense. The trial court disagreed with Unifund, finding that Unifund based its quasi-contractual claim on the same proofs as its contractual claim and that the failure of the contractual claim therefore resulted in the failure of the quasi-contractual claim. We agree.

---

[3] We note, however, that there was evidence supporting the trial court's findings that defendant did not authorize his father to apply for or use a credit card issued in his name, that it was father who engaged in all but two of the purchases made on the account, and that Unifund failed to establish the applicable interest rate or the accuracy of the final balance owed.

¶ 19. We first note that Vermont courts have "subject matter jurisdiction only over actual cases or controversies involving litigants with adverse interests." Brod v. Agency of Natural Res., 2007 VT 87, ¶ 8, 182 Vt. 234, 936 A.2d 1286. One "element of the case or controversy requirement is that plaintiffs must have standing, that is, they must have suffered a particular injury that is attributable to the defendant and that can be redressed by a court of law." Parker v. Town of Milton, 169 Vt. 74, 77, 726 A.2d 477, 480 (1998). Because standing is a necessary component of the court's subject-matter jurisdiction, it cannot be waived, and its absence can be raised at any time. Town of Charlotte v. Richmond, 158 Vt. 354, 358, 609 A.2d 638, 640 (1992) (noting subject-matter jurisdiction cannot be waived and can be raised at any time).

¶ 20. Here, Unifund has failed to establish standing to pursue a claim of unjust enrichment against defendant because it cannot show that it suffered any injury fairly traceable to defendant. See Parker, 169 Vt. at 77-78, 726 A.2d at 480 (setting forth elements of standing). Because Unifund provided no proof that it was connected to these transactions other than through the purported assignments, and because the assignments were not substantiated, there is nothing connecting Unifund to the charged-off account. It is Unifund, not Citibank, seeking to assert the equitable claim of unjust enrichment, and Unifund is thus without the right to make a claim of unjust enrichment against defendant.

¶ 21. A claim for unjust enrichment requires that (1) a benefit was conferred on defendant; (2) defendant accepted that benefit; and (3) it would be inequitable for defendant not to compensate Unifund for its value. See DJ Painting, Inc. v. Baraw Enters., Inc., 172 Vt. 239, 242, 776 A.2d 413, 417 (2001) (setting forth elements); see also Kellogg v. Shushereba, 2013 VT 76, ¶ 22, 194 Vt. 446, 82 A.3d 1121 (explaining that unjust enrichment applies if under

10

totality of circumstances it would be inequitable for benefitted party to retain benefit). Because Unifund has failed to establish a right to the charged-off account and has failed to prove it was otherwise connected with any of the credit card transactions on the account, defendant's failure to compensate Unifund for any benefit would not be inequitable. Whether Citibank would have been entitled to a recovery of some of the benefit it allegedly conferred upon defendant, based upon the evidence of credit card transactions adduced at trial, is not before us. On this evidence, Unifund was a stranger to those credit card transactions and therefore equity does not demand it be paid for benefits, if any, conferred by Citibank upon the defendant. For these reasons, we affirm the trial court's decision.

Affirmed.

FOR THE COURT:

_____
Associate Justice

11