# STATE OF VERMONT

SUPERIOR COURT
Rutland Unit

CIVIL DIVISION
Docket No. 458-8-15 Rdcv

| Midland Funding LLC vs. Cota |
| --- |

## ENTRY REGARDING MOTION

Count 1, Collection (458-8-15 Rdcv)

FILED

APR 12 2016

VERMONT SUPERIOR COURT
RUTLAND

Title: Motion for Reconsideration (Motion 2)
Filer: Midland Funding, LLC
Attorney: Sheldon M. Katz
Filed Date: October 19, 2015

No response filed

**The motion is DENIED.**

This is an action brought by a party that alleges it purchased a credit card debt and seeks a judgment to collect on the debt. Defendant was served but did not appear in the case. Plaintiff filed a Motion for Default Judgment.

On October 7, 2015, this court denied Plaintiff's Motion for Default Judgment with the following explanation: "There is not a sufficient showing that the original account was sold to Plaintiff in the sale of accounts on January 9, 2012." Plaintiff's counsel was given additional time to file supplemental affidavits.

Plaintiff's counsel filed a Motion for Reconsideration. Plaintiff's counsel argues that there has been a sufficient showing, and references V.R.C.P. Rule 9.1(g). The court has reconsidered but still concludes that there has been insufficient proof of Plaintiff's claim for the following reasons.

V.R.C.P. Rule 9.1(g) sets forth what must be included in a complaint in an action on a credit card debt: "the complaint must include the following. . ." This rule defines what must be included in the *pleading*. As the Reporter's Notes explain, this alleviates defendants from having to use the discovery process in order to determine what the basis for the claim is.[1] Compliance with a rule of pleading does not necessarily equate to proof of a claim. For example, under V.R.C.P. Rule 9(b), in pleading a fraud claim, "the circumstances constituting

---

[1] Prior to the effective date of this rule on September 1, 2015, it was not unusual for defendants to file an answer such as, "I never heard of Midland Funding LLC. How do I know if I owe money to this plaintiff? I once had a credit card with Walmart [for example], but I can't tell if this case is related to that or not, because I had other credit cards, too, so it could be any of them."

1

fraud...shall be stated with particularity." Even when stated with particularity, the claim is still just a claim, and must be proved with facts at trial or on a motion for default or summary judgment.

V.R.C.P. Rule 55 sets forth the requirements for obtaining judgment on a motion for default. Under Rule 55(b)(1), "No judgment by default shall be entered against a party who has not appeared in the action until the filing of an affidavit made on personal knowledge and setting forth facts as to liability and damages." Thus an affidavit is required that includes facts establishing liability and the amount due, and it must be made by a person with personal knowledge. V.R.C.P. 55(7) adds additional requirements for actions based on a credit card debt: "the motion for default shall include a copy of..." Several required documents are listed. However, the documents that must be attached are required in addition to the basic affidavit requirement. The documents do not take the place of an affidavit by a person with personal knowledge of facts establishing liability and damages. They simply provide supplementary documentation. An affidavit is needed to establish the relation between the documents and the claim and the accuracy of the documents.

The Plaintiff in this case is Midland Funding LLC. The affidavit in support of the Motion for Default Judgment is from a Jenna Taylor who identifies herself as an employee of an entity entitled Midland Credit Management, Inc., which she identifies as servicer of the account on behalf of Midland Funding LLC. She also states that she is authorized to make the affidavit on behalf of Midland Funding LLC.

Her statement of fact that Plaintiff owns the account is as follows: "Plaintiff is the current owner of, and/or successor to, the obligation sued upon, and was assigned all the rights, title and interest to defendant's CHASE BANK USA, N.A. account XXXXXXXXXXXX8181 (hereinafter "the account"). I have access to and have reviewed the records pertaining to the account..." She states that the account was sold by Chase to Plaintiff on January 9, 2012, and references an attached Bill of Sale. Other documents are also attached to the motion (as required by Rule 55(7)), but are not referenced in the affidavit.

The problem is that her statement is a general one, stating the conclusion that Plaintiff acquired the account on a certain date, but neither the attached Bill of Sale nor any of the other documents actually support the fact of assignment of the account that is the subject of this case. The issue is whether the court accepts her generalized statement as sufficient when the documents attached (many of which are not even referenced in the affidavit) do not support the statement.

The Bill of Sale describes itself as being an exhibit to a contract of sale of accounts, but the contract is missing. There is nothing in the Bill of Sale that identifies whether or not the account at issue was included in the sale.

There is a "Closing Statement" that provides no information at all relative to the account at issue being part of the sale of accounts that took place on January 9, 2012.

There is an "Affidavit of Sale of Account by Original Creditor," executed by an officer of JPMorgan Chase Bank, N.A., stating that on January 4, 2012, Chase sold a pool of accounts to

2

Midland Funding LLC. It further states that electronic records were transferred to the Buyer. There is nothing in the affidavit that indicates that the account at issue was included in that sale. The affidavit only shows that some accounts were sold; it does not show that the Defendant's account was included in the sale, nor does it make any statement describing the authenticity or accuracy or content of the electronic records that were sold. Next in order of documents, but not referred to in the affidavit, are two credit card statements without explanation. One is dated May 5, 2011 and shows a payment made on May 5, 2011 and a balance due of $7,782.15. The other is dated December 19, 2011 and shows a balance due of $9,412.70.

Finally, there is a piece of paper that purports to be "Data printed by Midland Credit Management, Inc. from electronic records provided by CHASE BANK USA, N. A. pursuant to the Bill of Sale / Assignment of Accounts dated 1/9/2012 in connection with the sale of accounts from CHASE BANK USA, N. A. to Midland Funding LLC." This piece of paper shows the Defendant's personal information and some account information. It includes data labelled "Charge Off Date," Last Payment Date," "COBal." The "COBal" (presumably "charge off balance") is shown as $9,412.70, which is the same amount showing as due on the December 19, 2011 statement. There is nothing in any of the affidavits authenticating this document or even describing or referring to it. The court is apparently expected to infer the accuracy of the date of the last payment on the account, and to infer that this was the date of default.

The date of default is a key fact for the court to use in determining whether the claim was filed within the statute of limitations period such that a plaintiff is entitled to relief. See *DaimlerChrysler Services v. Ouimette*, 2003 VT 47, ¶ 6. As noted, this fact is not supported by affidavit.

Essentially, there is no statement by affidavit from any person with knowledge who verifies under oath that there is documentation establishing that the particular account that is the subject of this case was included in the sale of accounts that took place from Chase to Midland Funding LLC on January 9, 2012. It is established that such a sale took place on that date, but not that this account was a part of that sale. It is also not established by affidavit on what date there was a default on the obligation, whether the default was within the statute of limitations period, the amount due at the time of default, and the amount of interest due from Defendant after default. There is a collection of documents from which the court is asked to make a number of inferences, but there is no actual establishment of the pertinent facts.

The court understands that the records are electronic, and is prepared to accept statements about facts that are in electronic records made in an affidavit by a person who can reliably establish the accuracy of the content of such records. The court has heard witness testimony from a person who under similar circumstances was able to identify what was in electronic records of a similar sale of accounts transaction, and identify that a particular account was included, and explain the content of the electronic records. However, the affidavits in this case do not contain such facts. The most that is shown by the affidavits in this case is a statement from a person who says, 'I work for a company that is an agent for the Plaintiff which bought this account,' and a statement from another person who states, 'I work for the seller and we sold some accounts to Midland Funding LLC on January 9, 2012." Without either affiant being able to clearly identify that the particular account was specifically included

3

in the sale of accounts on that date, there is not sufficient specificity of the chain of assignment to meet the Plaintiff's burden under Rule 55(b)(1) to establish the right to collect on this particular account. See *Unifund CCR Partners v. Daniel Zimmer*, 2016 VT 33.

Similarly, while there are account statements, no affidavit identifies them as statements of the account Plaintiff claims to have bought. The court is left to infer that fact from the combination of the name on the account statement and printout and the fact that the last four digits of the account number on the statement are the same last four digits of the account number on the unexplained printout as well as the fact that they are attached to the motion.

It is important for plaintiffs to be able to prove their entitlement to judgment, even when a defendant does not appear, in order for the public to have confidence in the integrity of the justice system. There is too big a risk that the recordkeeping on sale of accounts is not inherently reliable. See *id.* at ¶ 5 and ¶ 16. This court has had a defendant answer a credit card debt complaint by stating that the exact same plaintiff had already obtained a judgment on the exact same credit card account. Whether that was true or not is unknown, as the plaintiff thereafter dismissed the complaint. Nonetheless, it is the role of the court to make sure that judgments are not entered against parties, even those who do not appear, without sufficient proof of the facts supporting both liability and damages. This principle is not unique to credit card cases; rather, it is the fundamental principal embodied in Rule 55 relating to establishing liability for a judgment on a motion for default.

In the Motion for Reconsideration, Plaintiff's counsel states, "Plaintiff is at a loss to understand what is missing from the complaint and exhibits that will provide a more sufficient showing that Plaintiff acquired Defendant's account. . ." and seems to raise the question 'how else could one prove this kind of claim?' I am also aware of the position taken by some judges that for courts to require more than what was offered in this case would make it very difficult if not next to impossible for credit card debt purchasers to prove their claims in a court of law. However, it is not difficult to envision the content of an affidavit of a person who has checked all the records and documents and can identify and describe them, vouch for their accuracy, and describe what they show. Such an affidavit can set forth the specifics of what was checked and what the records showed and attach and reference the relevant documents to prove the critical facts such as those missing in this case: that the account at issue was in the group of accounts that was sold to the plaintiff in the sale of accounts transaction identified, the date of default, and the amount due at date of default plus interest thereafter.

Such an affidavit, with reference to attached documents, would sufficiently address issues of the plaintiff's entitlement to collect on the account, and is not different than the type of affidavit required in other kinds of cases in which a plaintiff is suing on a claim originally held by a third party that has been assigned to the plaintiff. The problem in this case is simply that the affidavit is not sufficiently specific, and the attachments are neither explained nor authenticated. A better affidavit would solve these problems. As noted above, the undersigned has had a witness in court testify to such information in a manner that satisfactorily supported the claim. If a witness can do it in oral testimony, the same information can be incorporated into one or more affidavits.

4

In addition to proof of liability, there is the issue of proving the amount due. The affidavit of Jenna Taylor states that "MCM's records show" that the defendant owed $9412.70 as of May 20, 2015. This is the amount that the credit card statement shows was due on December 19, 2011 and the amount shown on the printout as "COBal.". It appears that Plaintiff is not seeking any additional interest after December 19, 2011. If the December 19, 2011 statement were supported by affidavit, the amount claimed would be sufficiently proved. [2]

Again, the court is not seeking to impose an impossible task on plaintiffs who have purchased credit card debt, but simply seeking sufficient information to support a default judgment in a fair amount as required by Rule 55.

It is very possible that additional evidence would prove the claim. If so, Plaintiff is welcome to seek an opportunity for a hearing to present testimony. Even if the court were to grant judgment based on testimony in this case, that does not mean that the documentation offered in support of the Motion for Default was satisfactory. The basic principle is that embodied in Rule 55, the civil rule that sets forth the requirements for proving a claim when a defendant defaults: despite the default, the burden is on the plaintiff to prove its claim with "an affidavit made on personal knowledge and setting forth facts as to liability and damages." All that is needed is an affidavit (a) that is made by a person who has sufficient personal knowledge of all the relevant facts, and (b) that sets forth the facts with sufficient specificity to support the particular claim, both as to liability and amount claimed. The information is no doubt available. It just needs to be verified by the right people with knowledge of the specific facts in order for the court to be able to rely on it as reliable and accurate for purposes of default judgment.

Dated at Rutland this 12th day of April, 2016.

Hon. Mary Miles Teachout
Presiding Judge

Notifications:
Sheldon M. Katz (ERN 4784), Attorney for Plaintiff Midland Funding, LLC

---

[2] It is noted that in Jenna Taylor's affidavit, she purports to establish the reliability of "the records pertaining to the account" and states as follows: "I am familiar with and trained on the manner and method by which MCM [Midland Credit Management, Inc.] creates and maintains its business records pertaining to this account. The records are kept in the regular course of business. It was in the regular course of business for a person with knowledge of the act or event recorded to make the record or data compilation...the record or compilation is made at or near the time of the act or event." However, her statement relates to records of Midland Credit Management, Inc. The information related to date of default, amount due at default, etc. would have had to have been the records of Chase, who owned the account when the events occurred. There is no affiant to support the accuracy of the records made by Chase prior to transfer to Midland Funding LLC, which was prior to the apparent subsequent transmittal to Midland Credit Management, Inc.

5