Vermont Superior Court
Filed 01/03/23
Lamoille Unit

VERMONT SUPERIOR COURT

Lamoille Unit
154 Main Street
Hyde Park VT 05655
802-888-3887
www.vermontjudiciary.org



CIVIL DIVISION

Case No. 21-CV-02231

| Portfolio Recovery Associates, LLC v. John Stafford |
|---|

## ENTRY ORDER

This matter came to trial on July 11, 2022. At the hearing, the only contested issue arose concerning the admissibility of Plaintiff's business records. The Court, in order to facilitate its review, requested the parties to brief the specific issue of whether the evidence sought to be admitted by Plaintiff was, in fact admissible under V.R.E. 803(6) given that it was comprised, in large part, of electronic records generated by a third-party credit card company who had sold the original debt to Plaintiff. Defendant John Stafford argues that these records are inadmissible under the business records hearsay exemption because the records lack trustworthiness.

### Credit Card Debt

Many consumers use credit cards to make purchases. *Peter A. Holland, The One Hundred Billion Dollar Problem in Small Claims Court: Robo-Signing and Lack of Proof in Debt Buyer Cases*, 6 J. BUS. & TECH. L. 259, 264 (2011). When consumers use credit cards but fail to pay off the balance, the cards go into default. Id. If the consumer fails to pay the debt back to the credit card company, the credit card company has the option to sell the debt to a third-party debt buyer. Id. at 259. In some cases, the debt is also sold from a debt buyer to other debt buyers. Id. Once a third-party debt buyer owns the debt, they attempt to collect the debt from the consumer. Id.

### V.R.E. 803(6)

V.R.E. 803 lists hearsay exceptions that can apply regardless of whether the declarant is available. V.R.E. 803(6) states the hearsay exception for "records of regularly conducted business activit[ies]." The rule states that:

> A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted

business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, or by certification that complies with Rule 902(11), Rule 902(12) or a statute or rule permitting certification, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. The term "business" as used in this paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit.

Importantly, the Rule assumes the hearsay exception applies "unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness." V.R.E. 803(6). Therefore, Defendant must show that the records lack trustworthiness in order to keep them out of evidence.

The V.R.E. 803 Reporter's Notes state that:

Rule 803(6)–(10) deal with business records and public records. In these basically similar exceptions, trustworthiness is guaranteed by the regularity and lack of future concern with which the records are made, the actual reliance placed upon them in human affairs, and the duty of the recorder to make an accurate record.

*Regulation of Credit Card Debt and Debt Collectors*

A myriad of federal and state laws regulate electronic records, credit card debt, and debt collectors. In certain instances, federal law preempts state law because of the interest in national consistency in regulation.

In 2003, Vermont enacted the Uniform Electronic Transactions Act (UETA). 9 V.S.A. §§ 270–90. The UETA governs "electronic records and electronic signatures relating to a transaction." Id. at § 272. 9 V.S.A. § 282, titled "Admissibility in Evidence," states, "In a proceeding, evidence of a record or signature may not be excluded solely because it is in electronic form." Therefore, courts cannot discriminate against records because they are electronic.

Federally, the agencies tasked with regulation of credit cards and debt collection include the Federal Trade Commission (FTC), Consumer Financial Protection Bureau (CFPB), Office of Comptroller of Currency (OCC), and the National Credit Union Administration (NCUA). *Lisa Stifler, Debt in the Courts: The Scourge of Abusive Debt Collection Litigation and Possible Policy Solutions*, 11 HARV. L. & POL'Y REV. 91, 123 (2017); *Credit Cards: Fair Debt Collection Practices Act Could Better Reflect the Evolving Debt Collection Marketplace and Use of Technology, United States*

*Government Accountability Office* 14–15 (Sept. 2009). A variety of state agencies also oversee credit cards and debt collection. *U.S. Government Accountability Office*, supra, at 14.

The U.S. Congress enacted the Fair Debt Collection Practices Act (FDCPA) to protect consumers from abusive practices by creditors. 15 U.S.C.A. § 1692. To this end, the FDCPA regulates communications between debt collectors and consumers and seeks to stop harassment, abuse, and misleading representations by creditors. Id. at §§1692c–e. To verify debt under the FDCPA, the debt collector:

> shall . . . send the consumer a written notice containing—(1) the amount of debt; (2) the name of the creditor to whom the debt is owed; (3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector; (4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and (5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

15 U.S.C.A. § 1692g (a). Unless the consumer disputes the debt asserted by the creditor, the creditor assumes the information is valid. Although creditors shall notify consumers, "[t]he failure of a consumer to dispute the validity of a debt under this section may not be construed by any court as an admission of liability by the consumer." 15 U.S.C.A. § 1692g (c). The FDCPA also provides consumers with a private right of action for violations by creditors. *Mary Spector, Litigating Consumer Debt Collection: A Study*, 31 No. 6 BANKING & FIN. SERVICES POL'Y REP. 1, 2 (June 2012).

The Federal Depository Regulators oversees third-party debt collectors. *U.S. Government Accountability Office*, supra, at 15. If Regulators suspect problems with third-party debt collectors, they can investigate the collector. Id. at 16. If the Regulator finds problems, the Regulator can take disciplinary action against the collector. Id.

*Plaintiff's Witness establishes the reliability of the records under V.R.E. 803(6)*

The witness from Portfolio Recovery Associates, LLC, custodian of records Lucinda Stacey, testified about Portfolio's records of Defendant's alleged account. Portfolio has employed Ms. Stacey for over 10 years as a custodian of records. Ms. Stacey testified that in her position, she oversees and maintains records during the ordinary course of business. Ms. Stacey explained Defendant's alleged

defaulted account based on her experience and training regarding the records system. V.R.E. 803(6) requires records to be (1) made at or near the time of the event by a person with knowledge and (2) kept in the ordinary course of business. Testimony from "the custodian or other qualified witness" shows this, "unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness." V.R.E. 803(6). Here, Ms. Stacey testified to the authenticity of the records kept by Portfolio, which Portfolio received from Citibank.

While Ms. Stacey did not create Defendant's alleged account, she testified to the transaction between Citibank and Portfolio and how Portfolio verifies accounts bought from other parties. When credit card debt is sold from the original credit card company to a third-party debt collector, the parties enter into a contract of sale. In every contract, there is an implied covenant of good faith and fair dealing. *LoPresti v. Rutland Regional Health Services, Inc.*, 177 Vt. 316, 332 (2004). The underlying principle is that the parties promise not to undermine or destroy the other's rights in the agreement. *Carmichael v. Adirondack Bottled Gas Corp. of Vermont*, 161 Vt. 200, 208 (1993). This covenant protects against bad faith. Id. at 209. Ms. Stacey testified that Portfolio assumed the account is accurate based on the contract between Portfolio and Citibank. This assumption is based on the covenant of good faith and fair dealing, unless there are objections. Defendant had an opportunity to dispute the information—he did not do so. Additionally, Ms. Stacey testified that she calculated the charges on the account to ensure the final balance was accurate.

Once Portfolio purchased Defendant's alleged delinquent account, Portfolio integrated those records into their business records. While not binding on this court, Maine's caselaw is persuasive regarding admissibility of integrated records under V.R.E. 803(6) because Maine's rule is substantially similar to Vermont's rule. The Maine Supreme Court emphasized that the receiving entity's reliance on the record speaks to its trustworthiness. *Bank of New York Mellon v. Shone*, 2020 ME 122, ¶ 9. Additionally, the receiving entity establishes reliability by validating the record in some way. Id. at ¶ 11. See also 2 KENNETH S. BROUN ET AL., MCCORMICK ON EVIDENCE § 292, at 477-78 (Robert P. Mosteller ed., 8th ed. 2020). Here, Ms. Stacey testified that Portfolio verifies the information received from Citibank through a due diligence process.

To meet the second prong of V.R.E. 803(6), Ms. Stacey testified that these records are kept in the ordinary course of business. Finally, neither party introduced evidence that called the truthfulness of the records into doubt, which is the caveat included in V.R.E. 803(6).

Additionally, the V.R.E. 803 Reporter's Notes state that:

> Rule 803(6)–(10) deal with business records and public records. In these basically similar exceptions, trustworthiness is guaranteed by the regularity and lack of future concern with which the records are made, the actual reliance placed upon them in human affairs, and the duty of the recorder to make an accurate record.

Ms. Stacey's testimony also supports the records' trustworthiness under the V.R.E. Reporter's Notes. Courts and society as a whole frequently rely on records from Portfolio and similar companies to establish liability of credit card debt. Also, Ms. Stacey testified that Portfolio regularly purchases accounts from Citibank and other credit card companies. Real concerns exist in the world of debt buying. *Holland*, supra, at 259. Mistakes can occur when accounts are transferred between companies, such as inaccurate account balances and attempts to recover a debt twice. Id. at 269–70. While it is known that third-party debt buyers have a history of trying to collect based on incorrect information, Defendant has not argued this here. In the absence of reasons to doubt the custodian's trustworthiness, the court finds there is sufficient information to meet the requirement under 803(6).

The court understands and acknowledges the problems with the debt-buying industry, but also cannot allow a blanket exclusion of electronic evidence in these cases. An overall mistrust of electronic records from third-party debt collectors is unfair and not allowed under Vermont law. 9 V.S.A. §§ 270–90. To the contrary, electronic records, credit card companies, and debt collection are highly regulated fields, as explained above. This is not the wild west. Rather, fields that were novel in the 1990s and early 2000s are now routine and under scrutiny by federal agencies.

Additionally, this case is distinguishable from the Vermont Supreme Court's ruling in *Unifund.* *Unifund CCR Partners v. Zimmer*, 2016 VT 33, 201 Vt. 474 (2016). The Court held that *Unifund* failed to establish the necessary foundation for the admission of Defendant's credit card debt under V.R.E. 803(6). Id. at ¶ 4. This was because the witness for Unifund failed to establish the reliability of the records. Id. at ¶¶ 15–17. In particular, the court found that the custodians had little knowledge of the records and a discrepancy in the records called the reliability of the records into question. Id. at ¶¶ 4–5. Here, Ms. Stacey has significant experience as a custodian of records, and her testimony showed her knowledge of Portfolio's record system. Ms. Stacey also testified regarding Portfolio's assumption that records purchased from Citibank are accurate based on the contract of sale, and that Portfolio also takes steps to independently verify the information. Also, in *Unifund*, the court found a discrepancy in signatures on documents which called the truthfulness of the records into question. In this case, neither

party raised a similar concern. Therefore, the present case is distinguishable from *Unifund* and does not compel the same result.[1]

## **ORDER**

For these reasons, the court finds Ms. Stacey's testimony is sufficient to show the trustworthiness of records for the purposes of V.R.E. 803(6). Therefore, the evidence is ADMITTED. The Court shall enter a separate Judgment Order.

Electronically signed on 1/3/2023 2:05 AM pursuant to V.R.E.F. 9(d)

_____
Daniel Richardson
Superior Court Judge

---

[1] The Court will note that the distinguishing factor is whether there is counter-evidence to suggest unreliability. In *Unifund* and in the examples cited above, inconsistencies or testimony suggesting that the debt has been wrongfully assigned to a Defendant may raise substantial evidentiary questions and require more than just business records to establish or disprove the facts alleged. In such situations, the issue of whether the Court can rely on the business records becomes more complicated.