2010 VT 107

# State of Vermont v. Steven Thomas, Jr.

[14 A.3d 961]

No. 09-325

Present: **Reiber, C.J., Dooley, Johnson, Skoglund and Burgess, JJ.**

Opinion Filed December 10, 2010

*Affirmed in part, reversed in part, and remanded.*

*Tracy Kelly Shriver*, Windham County State's Attorney, and *Ellen Kryger*, Deputy State's Attorney, Brattleboro, for Plaintiff-Appellee.

*Allison N. Fulcher* of *Martin & Associates*, Barre, for Defendant-Appellant.

¶ 1. **Dooley, J.** Defendant appeals the district court's order of restitution following his guilty plea to aggravated assault. On appeal, defendant argues that the court erred in ordering restitution because: (1) defendant's conviction was for attempting to cause serious bodily injury, and therefore any resulting injury was not connected to defendant's crime; and (2) neither of the recipients of the restitution were victims of defendant's crime.[*] In addition, defendant claims that because restitution was not part of

---

[*] Defendant argued in the district court that there were actually two incidents of violent conduct between defendant and the victim and defendant could not be held responsible for injuries in the second incident because he acted in self-defense during that conflict. On appeal, the State urges that we respond to that argument on a waiver theory adopted by the trial court. We conclude that defendant has not renewed his argument on appeal and do not address it.

his plea agreement the court committed plain error in not giving him an opportunity to withdraw his guilty plea prior to ordering restitution. We affirm the grant of restitution, but strike the portion of the order granting restitution to the hospital, and remand.

¶ 2. The basic facts of the incident leading to defendant's arrest are as follows. In April 2007, defendant and the victim were at a friend's party. Late in the evening, the victim went into a small room with a woman, who was apparently defendant's ex-girlfriend, and fell asleep. The victim awoke to being punched in the head and face by several people, including defendant. The victim and his assailants were separated. A few minutes later, the victim went outside in front of the house, where he and defendant again had an altercation. Defendant wrestled the victim to the ground, punched him and choked him. The victim passed out. The victim was then driven to a friend's house, and the next morning he went to the emergency room at Springfield Hospital. He was transferred to Dartmouth-Hitchcock Medical Center (DHMC) where he was admitted and remained for four or five days. In October 2007, defendant was charged with aggravated assault for attempting to cause the victim serious bodily injury, in violation of 13 V.S.A. § 1024(a)(1).

¶ 3. In June 2008, defendant entered a plea agreement with the State, wherein he admitted to violating his probation and pled guilty to aggravated assault. The plea agreement recommended a combined sentence of eighteen-to-twenty-seven months to serve on a preapproved furlough program. The agreement made no mention of restitution. At the change-of-plea hearing, the court outlined the elements of the aggravated assault charge and the underlying facts. In response to the court's questioning, defendant agreed that he had done the following acts: "while some people held [the victim] . . . [defendant] had punched him repeatedly in the face causing him to pass out and be hospitalized for a period of time." The court found defendant's plea was being made knowingly and voluntarily, and accepted it. Restitution was not discussed at the hearing. The court deferred sentencing to determine if defendant was eligible for a specific preapproved furlough program. The plea agreement stated that defendant could withdraw his plea if he did not qualify for this program.

¶ 4. Defendant was accepted into the furlough program, and at the sentencing hearing in August 2008, the State explained "there

[was] a substantial amount of restitution to [the victim] for the assault, and [it] would be requesting restitution." In response, defense counsel stated that defendant challenged the amount of restitution and whether there was medical causation for the injuries. Defendant did not challenge restitution based on its omission from the plea agreement, nor did defendant seek to withdraw his plea on this basis. On September 5, defendant noticed the court that he disputed restitution because he did not agree to it in the plea agreement and he lacked an ability to pay it. On December 5, 2008, the State filed a proposed restitution order, requesting that defendant pay $10,000 to the victims' compensation program. Defendant opposed the request, asserting that restitution was not part of the plea agreement, that some injuries may have been the result of self-defense and therefore were not proximately caused by the crime, and that he did not have the ability to pay. Several further motions were filed by both sides.

¶ 5. At a status conference on February 17, 2009, the court attempted to narrow defendant's challenges to restitution. Defendant argued that the court lacked authority to award restitution because it was not included as part of the plea agreement. The court concluded that restitution was properly before the court given that defendant knew when he accepted the plea agreement that the State intended to seek restitution and had agreed to cooperate with the restitution unit as part of his supervised community sentence. Defendant's other challenges were scheduled for a full evidentiary hearing.

¶ 6. The court held a restitution hearing on August 4, 2009. The victim, defendant and several witnesses testified. Defendant argued at the outset of the hearing that he was not responsible for the victim's injuries that occurred outside the house because the victim instigated that part of the altercation. In support, defendant sought to introduce the testimony of several witnesses. The court agreed to hear testimony if the evidence indicated that someone other than defendant caused an injury to the victim, but the court ruled it would not entertain a self-defense claim. The State introduced evidence to demonstrate that the victims' compensation program had paid $10,000 in medical bills on the victim's behalf and that there was a bill for $8673 outstanding to DHMC.

¶ 7. Based on this evidence, the court concluded the State had made a sufficient showing to support granting restitution. The

court noted that defendant had entered a plea of guilty and agreed to the factual basis of the charge including that he had repeatedly punched the victim in the face causing the victim to be hospitalized. The court found that the victim's injuries to his neck, spine, face and brain were caused by defendant's actions and that there was no means to distinguish between the injuries that occurred inside and outside the house. The court further found that the State had sustained its burden in demonstrating that the victim's medical bills were a result of the injury defendant perpetrated on the victim. Consequently, the court ordered that defendant pay $10,000 in restitution to the victims' compensation program, and $8673 to DHMC. Defendant appeals.

■ ¶ 8. Pursuant to statute, restitution is to be "considered in every case in which a victim of a crime . . . has suffered a material loss." 13 V.S.A. § 7043(a)(1). Victim is defined as "a person who sustains physical, emotional or financial injury or death as a direct result of the commission or attempted commission of a crime." 13 V.S.A. § 5301(4). "The purpose of restitution is to compensate the victim, rather than to punish the defendant." *State v. Bohannon*, 2010 VT 22, ¶ 6, 187 Vt. 410, 996 A.2d 196.

■ ¶ 9. On appeal, defendant first argues that his plea to attempting to cause serious bodily injury cannot serve as a basis for restitution. On this point, he attempts to bring himself within *State v. Rollins*, 2007 VT 127, 182 Vt. 644, 944 A.2d 218 (mem.), which defendant construes as holding that restitution cannot be ordered in a case where there was only an attempt to commit a crime. Defendant misreads *Rollins*. As that decision points out, "the restitution statute permits restitution in attempt crimes." *Id.* ¶ 4 (citing 13 V.S.A. § 5301(4), which defines victim to include a person injured by the "attempted commission of a crime"). What *Rollins* holds is that the State must prove causation between the crime for which defendant was convicted and the victim's loss. *Id.* ¶¶ 7-8; see *State v. Forant*, 168 Vt. 217, 222-23, 719 A.2d 399, 403 (1998) ("An order of restitution must relate directly to the damage caused by the defendant's criminal act for which he was convicted.").

■ ■ ¶ 10. This is a very different case from *Rollins*. Here, defendant was convicted of a completed crime of which an "attempt" is an element with respect to the extent of the harm. See 13 V.S.A. § 1024(a)(1) (aggravated assault defined as "attempts

to cause serious bodily injury to another . . . under circumstances manifesting extreme indifference to the value of human life"). Defendant's attempt in this context does not preclude accomplishment of the injury resulting here. Indeed, there is no dispute that defendant's actions caused physical injury to the victim. At best, defendant has an argument that he was charged with attempting to cause serious bodily harm but the restitution is premised on the victim actually suffering serious bodily harm. This argument fails, however, because the extent of the injury charged does not control whether the victim can receive full restitution for the actual injury sustained, as long as the injury relates to the conduct for which defendant was convicted. See *State v. VanDusen*, 166 Vt. 240, 244, 691 A.2d 1053, 1055 (1997). Regardless of how the crime defendant committed was charged, the victim's injuries were caused by that crime, and are compensable.

¶ 11. Next, we address defendant's argument that the court committed plain error in not informing him that he had a right to withdraw his plea when the State sought restitution and restitution was not mentioned in the plea agreement. Vermont Rule of Criminal Procedure 11(e)(4) provides:

> If the court rejects the plea agreement or defers decision upon it, the court shall inform the parties of this fact, advise the defendant personally in open court that the court is or may not be bound by the plea agreement, pursuant to Rule 32(d) afford a defendant who has already pleaded the opportunity to then withdraw his plea, and advise the defendant that if he persists in his plea the disposition of the case may be less favorable to the defendant than that contemplated by the plea agreement.

We conclude there was no violation of this rule because the court accepted the parties' plea agreement and sentenced defendant to a term of imprisonment consistent with its terms.

¶ 12. Defendant's argument is based on a fundamental misunderstanding of the nature of restitution. The governing statute provides that restitution shall be "considered in every case in which a victim of a crime . . . has suffered a material loss." 13 V.S.A. § 7043(a). We agree with the observation of the California Court of Appeals under a similar California provision that "[v]ictim restitution may not be bargained away by the [prosecution]."

112

*People v. Brown*, 54 Cal. Rptr. 3d 887, 896 (Ct. App. 2007); see Cal. Const. art. 1, § 28(a)(13)(B) ("Restitution shall be ordered from the convicted wrongdoer in every case . . . in which a crime victim suffers a loss."); see also *State v. Barrs*, 833 P.2d 713, 714, 714 n.1 (Ariz. Ct. App. 1992) (reaching same conclusion under restitution statute stating that "the court shall require the convicted person to make restitution to the . . . victim . . . in the full amount of the economic loss"). Restitution is a right of the victim, not of the prosecution. See *People v. Valdez*, 30 Cal. Rptr. 2d 4, 9 (Ct. App. 1994). Irrespective of the prosecution's wishes, the court is required to consider restitution in every case. Thus, the fact that restitution was not covered in the plea agreement does not alter the statutory requirement that the court must consider whether to order it. Defendant could have had no reasonable expectation that restitution would not be ordered simply because the plea agreement was silent on the issue. See *United States v. Miller*, 900 F.2d 919, 921 (6th Cir. 1990) (explaining that where plea agreement does not address restitution, defendants' expectation that none would be awarded was not reasonable).

¶ 13. Thus, the State's request for restitution did not change the terms of the parties' plea agreement, which did not mention restitution. In this key aspect, this case is unlike *State v. Bergerson*, 144 Vt. 200, 475 A.2d 1071 (1984), on which defendant relies. In *Bergerson*, the defendant entered a guilty plea pursuant to a plea agreement in which the State agreed to recommend no jail term if defendant made full restitution. The court accepted the plea, but deferred sentencing pending a presentence investigation. Defendant made restitution as promised. At sentencing, however, the court rejected the State's recommendation of no jail term and instead imposed a six-to-eighteen-month sentence, all suspended but thirty days. On appeal, this Court concluded that it was plain error for the trial court to fail to inform the defendant of his right to withdraw his guilty plea in accordance with Rule 11(e)(2) after the court refused to impose the sentence recommended in the plea agreement. *Id.* at 203-04, 475 A.2d at 1073-74.

¶ 14. In contrast to *Bergerson*, the trial court here accepted the parties' plea agreement and imposed the sentence agreed to by the parties. As stated above, the court's decision to consider restitution at the sentencing hearing did not amount to a rejection of the plea agreement. Restitution was not part of defendant's bargain with the State, and therefore the matter was open for the

court's consideration. There was no error, and thus no plain error, in failing to allow defendant to withdraw his plea of guilty because the court did not reject the plea agreement.

¶ 15. Finally, defendant argues that the victims' compensation program and DHMC were not victims of his crime, and therefore the court erred in directing restitution to them. We address each of these institutions separately.

¶ 16. As to the former, the statute specifically allows an award of compensation to the victims' compensation fund. The restitution statute explains that restitution may be paid directly to the restitution unit "[t]o the extent that the victims compensation board has made payment to or on behalf of the victim." 13 V.S.A. § 7043(h)(2). The restitution unit then is required to make payment to "the victims compensation fund." *Id.* In this case, the court found that the board authorized and paid on the victim's behalf the maximum amount of $10,000. See 13 V.S.A. § 5356(a). In its order, the court authorized a payment of $10,000 to the "Vermont Victim Compensation Program," and ordered that it be paid at $50 per month to the restitution unit. While the court used the term "compensation program" rather than "compensation fund," there is no question of the court's intent. Moreover, the court properly directed payment to the restitution unit, as required by the statute. We see no error in this portion of the restitution order.

¶ 17. We have a different view of the designation of the hospital as a victim and the order to pay restitution directly to it. The statute does not contain any provision related to medical providers, and we have not previously addressed whether medical providers may be the direct recipients of restitution. The statute authorizes the court to order a defendant to "[m]ake restitution or reparation to the victim of his or her conduct." 28 V.S.A. § 252(b)(6). It also defines victim as "a person who sustains physical, emotional or financial injury or death as a direct result of the commission or attempted commission of a crime." 13 V.S.A. § 5301(4). Our primary objective is to implement the intent of the Legislature. See *State v. Jarvis*, 146 Vt. 636, 636, 509 A.2d 1005, 1006 (1986). The Legislature's use of the words "direct result" indicates that it intended to provide restitution only to direct victims of crime. We have previously held that the restitution statute has a narrow definition of victim and that "restitution . . .

may not include payments to insurers of direct victims." *State v. Webb*, 151 Vt. 200, 202, 559 A.2d 658, 660 (1989). While DHMC has suffered financial injury, this injury is not the "direct result of the commission . . . of a crime," 13 V.S.A. § 5301(4), but an indirect result. See *Commonwealth v. Keenan*, 2004 PA Super 232, ¶ 9, 853 A.2d 381 (holding that medical provider is not proper recipient of restitution because provider's loss is consequential to, rather than a direct result of, defendant's criminal conduct).

¶ 18. Because DHMC is not a direct victim of defendant's crime, the portion of the order granting it restitution is struck. As the State argues, the proper remedy is to order that the amount of the hospital bill be paid to the victim of the assault, and we remand to the superior court for that purpose.

*The district court's decision to order restitution, without allowing defendant to change his plea of guilty, is affirmed. The order of restitution to the victims' compensation fund is affirmed. The order of restitution to Dartmouth-Hitchcock Medical Center is struck, and the matter is remanded for a new restitution order consistent with this decision.*