2014 VT 1

### State of Vermont v. Jason Gorton

[90 A.3d 901]

No. 12-147

Present: **Reiber, C.J., Dooley, Skoglund, Burgess and Robinson, JJ.**

Opinion Filed January 17, 2014

*William H. Sorrell*, Attorney General, and *David Tartter*, Assistant Attorney General, Montpelier, for Plaintiff-Appellee.

*Matthew F. Valerio*, Defender General, *Marshall Pahl*, Appellate Defender, and *Natalie Wicklund*, Law Clerk (On the Brief), Montpelier, for Defendant-Appellant.

¶ 1. **Skoglund, J.** Defendant Jason Gorton appeals a trial court order requiring him to pay $33,786.72 in restitution following a conviction for embezzling cigarettes from the store where he was employed. Defendant argues that the State's request for restitution from defendant was time-barred and the court erred in granting the order. Defendant further objects to the order itself on a number of grounds, arguing that: (1) the court erred in requiring restitution beyond the temporal scope of conviction, (2) the court did not take into account defendant's ability to pay, (3) the court failed to find that the loss was uninsured, and (4) the court erroneously based its restitution findings on inadmissible hearsay offered by the State. We reverse and remand to the trial court for a new evidentiary hearing limiting the scope of restitution to the six months reflected in the charge filed by the State against defendant.

¶ 2. The facts of this case are as follows. Defendant was employed as a night manager by Price Chopper grocery store in Essex Junction, Vermont for two years. Over the course of multiple shifts, defendant found and used several lost credit cards to buy gift cards from the store. After some of the cards were reported stolen to police, Price Chopper officials began investigating the thefts and recognized defendant in a surveillance video, using one of the credit cards. Two of Price Chopper's internal loss-prevention agents confronted defendant at the store and questioned him about the cards. During this interview, defendant admitted to using the lost credit cards to purchase $900 worth of gift cards, Christmas gifts and dinners for his daughter. Upon further questioning, defendant also confessed to having stolen various merchandise during his shifts — namely cartons of cigarettes and some miscellaneous grocery items. A written statement was drafted and signed by defendant stating that in addition

to the $900 of fraudulent credit card purchases, defendant "stole an average of eight cartons [of cigarettes] per week for a total of $40,560 over the course of a year and a half" and approximately $10 worth of soda, shampoo, deodorant and body-wash per shift for nine months.

¶ 3. A little over a week after this interview, defendant met with a police officer at the Essex Police Department. Defendant told the officer that he did not think he stole as many cartons of cigarettes as initially estimated in the Price Chopper interview, revising the estimate of cartons he took to seventy-five or eighty over the year-and-a-half period.

¶ 4. Defendant was eventually charged with one count of embezzlement and four counts of fraudulent use of a credit card. The State's information specifically charged defendant with embezzling cigarette cartons from "on or about March 1 to August 24, 2010." Defendant pled guilty to all charges, and was sentenced to six months to five years of imprisonment for the embezzlement charge and six-to-twelve months for the fraudulent credit card charges, all suspended except for sixty days on work crew. At the second of two sentencing hearings, the court also indicated that the State should request a restitution hearing within thirty days; however, the State did not file a request until almost four months later. A restitution hearing was held three months after the State filed its request.

¶ 5. At the restitution hearing, defendant testified that the number of cigarette cartons he actually stole was around seventy-five to eighty. Defendant stated that he had signed the written statement with the higher estimate of stolen cartons because he felt pressured to agree with the Price Chopper agents' figures. The supervisor of the Price Chopper loss prevention unit also testified at the hearing, attesting to the amount of inventory shortages Price Chopper experienced during the time defendant had indicated he was stealing from the store. Because Price Chopper does not separate cigarettes from other grocery items in its inventory shortage accounting, the supervisor testified that Price Chopper experienced a total grocery loss of $69,034 during this period but could not estimate the store's cigarette losses alone.

¶ 6. Following the hearing, the court issued the restitution order that is at issue in this case. The trial court found that the grocery inventory shortage figures supported defendant's initial estimate

of the amount of cartons he had stolen, and ordered defendant to pay restitution equal to the wholesale price of eight cartons of cigarettes a week over eighteen months for a total of $33,786.72. This appeal followed.

¶ 7. We begin by addressing defendant's assertion that the trial court committed reversible error by allowing a restitution hearing to occur after the State missed the court imposed thirty-day deadline for requesting a hearing. At the restitution hearing, defendant raised the issue of the State's tardiness in filing its restitution request almost four months after the sentencing hearing in which the court imposed the deadline. The trial court acknowledged that the State's request fell outside of the thirty days, but allowed the restitution hearing to go forward based on Vermont's statutory requirement that restitution be considered in every case in which a victim suffers a material loss, 13 V.S.A. § 7043(a)(1), and a finding that defendant would suffer no prejudice in allowing the hearing to take place.

¶ 8. ▓ We review restitution orders for an abuse of discretion, and interpret controlling statutes de novo. *State v. Kenvin*, 2011 VT 123, ¶ 6, 191 Vt. 30, 38 A.3d 26. Section 7043 imposes no hard deadline for when a restitution request must be made, and we decline defendant's request to interpret this provision as holding that such a deadline is present. The only relevant timeframe in § 7043 directs that the State has up to a year to request restitution from the Restitution Fund if not requested at sentencing. 13 V.S.A. § 7043(g)(2)(A), (B). Here, the State did request restitution at the first sentencing hearing, stating clearly that "we would like the case set up for a restitution hearing and agree on the amount of restitution." Following this statement, the State further emphasized that the "basis for the sentence . . . was a significant theft . . . . [of] 40,000 dollars or 42,000 dollars," and engaged in a back and forth with the judge as to where those figures came from, to which the State concluded, "[s]o I guess that would be the benefit of having a restitution hearing."

¶ 9. ▓ ▓ Because the State explicitly requested restitution at sentencing, § 7043(g)(2)(A) or (B) was never triggered, as the defense contends it was. Furthermore, defendant was well aware of the importance of restitution in this case, as his counsel observed that "restitution is the biggest issue . . . [t]he question being how much is owed for the theft of various cartons of

cigarettes." This Court has held that "[r]estitution is a right of the victim, not of the prosecution," *State v. Thomas*, 2010 VT 107, ¶ 12, 189 Vt. 106, 14 A.3d 961, and that "[t]he purpose of restitution is to compensate the victim, rather than to punish the defendant." *State v. Bohannon*, 2010 VT 22, ¶ 6, 187 Vt. 410, 996 A.2d 196. The trial court followed its statutory duty to consider restitution where the victim suffered a material loss under § 7043(a)(1). In so doing, it disregarded a timeline which it had itself imposed, and only after finding that defendant would suffer no prejudice. There was no abuse of discretion in such action.

¶ 10. We next consider defendant's argument that the restitution order erroneously required defendant to reimburse Price Chopper beyond the scope of his conviction. There is no dispute among the parties that defendant admitted to embezzling cigarettes over the course of eighteen months.[*] In the information, the State charged defendant with one count of embezzlement of cigarettes over the period "on or about March 1 to August 24, 2010." However, at the change-of-plea hearing, the trial judge misstated that "[t]he charge against you reads that on August 24th, 2010, you were an employee of Price Chopper and you took, with intent to embezzle . . . cartons of cigarettes." Defendant submits that because the trial court misstated the timeframe at the plea hearing, defendant pleaded guilty to only one day of embezzlement, and restitution should therefore be limited to payment for cigarettes stolen on that single day alone.

¶ 11. In response to defendant's argument, the State recognizes the court's misreading of the dates, but contends that the judge's mistake does not require limiting the restitution award to one day's worth of stolen cigarettes. The State does acknowledge some error in the timeframe, though, and submits that the restitution order should be limited to the six-month range contained in the information document.

¶ 12. ■ ■ The trial court has discretion in determining the amount of restitution owed, so long as there is a direct link between the victim's loss and the defendant's conduct. *Kenvin*, 2011 VT 123, ¶¶ 6, 9. Vermont's restitution statute expressly states that "[a]n order of restitution may require the offender to pay restitution for an offense for which the offender was not convicted

---

[*] Though defendant changed his estimate of the *amount* of cigarettes he stole over the course of eighteen months, the eighteen-month timeframe is not disputed.

if the offender knowingly and voluntarily executes a plea agreement which provides that the offender pay restitution for that offense." 13 V.S.A. § 7043(e)(3). Here, regardless of the judge's misstatement of the period of embezzlement at the change-of-plea hearing, defendant entered into a plea agreement that contained a note in the box marked "other" which stated "[r]estitution for all charges, including those dismissed, amount to be determined by hearing."

¶ 13. With such language present on the plea agreement that defendant signed, the fact that the trial court misspoke did not limit the restitution to the one-day charge description at the change-of-plea hearing. 13 V.S.A. § 7043(e)(3). Even if we accepted the strained assertion that defendant pleaded guilty to only one day's worth of embezzlement, it was still within the trial court's discretion to award restitution based on the entire charge — which according to the information submitted by the State is a six-month period from March to August 2010. We accept the State's concession that it was error to grant restitution for eighteen months, and therefore remand for a new evidentiary hearing to determine the store's material loss during the six-month timeframe from March to August 2010.

¶ 14. ■ Although we are remanding for a new hearing, we briefly address two issues defendant raises that may reemerge on remand. First, defendant argues, and the State concedes, that the trial court failed to make findings on defendant's ability to pay prior to issuing the restitution order. Vermont law requires the court to "make findings with respect to . . . [t]he offender's current ability to pay restitution, based on all financial information available to the Court," 13 V.S.A. § 7043(d)(2), and this Court has firmly held that "failure of the court to make any findings as to defendant's ability to pay the restitution award requires our reversal of the restitution order." *State v. Sausville*, 151 Vt. 120, 121, 557 A.2d 502, 503 (1989) (citing *State v. Curtis*, 140 Vt. 621, 623, 443 A.2d 454, 456 (1982) (per curiam) ("The instant record is devoid of any finding on the defendant's ability to pay. Thus, the restitution order cannot stand.")). Thus, on remand, the trial court is directed to make findings on defendant's ability to pay.

¶ 15. ■ Defendant also argues that the trial court erred by not making findings as to whether Price Chopper's losses were uninsured. Vermont's restitution statute allows for compensation of

a victim's "material loss," which is defined as "uninsured property loss, uninsured out-of-pocket monetary loss, uninsured lost wages, and uninsured medical expenses." 13 V.S.A. § 7043(a)(2). The statute also directs the court to "make findings with respect to . . . [t]he total amount of the material loss incurred by the victim." *Id.* § 7043(d)(1). It is the State's burden to establish the victim's loss, but "only a reasonable certainty of estimated loss is required" and the trial court has discretion in determining the restitution amount. *State v. VanDusen*, 166 Vt. 240, 245, 691 A.2d 1053, 1056 (1997); see also *State v. May*, 166 Vt. 41, 45, 689 A.2d 1075, 1078 (1996) (holding that a restitution order for lost profits was speculative and did not meet the reasonable certainty standard). In light of the fact that a new evidentiary hearing will be held, we do not address whether the trial court made the appropriate findings below, but on remand new findings should be made as to the uninsured status of Price Chopper's losses over the six-month restitution period.

¶ 16. Finally, we need not reach defendant's last argument that the court erred in relying on inadmissible hearsay. As we remand for a new evidentiary hearing, that issue is moot.

*Reversed and remanded for further proceedings.*