NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2017 VT 82

No. 2016-162

| | |
|---|---|
| State of Vermont | Supreme Court |
| | |
| | On Appeal from |
| v. | Superior Court, Chittenden Unit, |
| | Criminal Division |
| | |
| Diane E. Stewart | April Term, 2017 |

James R. Crucitti, J.

David Tartter, Deputy State's Attorney, Montpelier, for Plaintiff-Appellee.

Matthew F. Valerio, Defender General, and Dawn Matthews, Appellate Defender, Montpelier, for Defendant-Appellant.

PRESENT: Reiber, C.J., Skoglund, Robinson and Eaton, JJ., and Dooley, J. (Ret.), Specially Assigned

¶ 1. **ROBINSON, J.** This case requires us to consider whether a bank is entitled to restitution as a "direct victim" of a crime when it incurred financial harm by reimbursing an accountholder for funds it had previously drawn from the account to pay a check that turned out to be forged. Defendant, who was convicted of embezzling from her former employer, appeals the trial court's restitution order that required her to pay the bank the amount that she had embezzled, arguing that the bank is not a direct victim of the crime and therefore is not entitled to restitution. We affirm.

¶ 2. The relevant facts are as follows. From December 2014 to July 2015, defendant was a secretary at a law firm. In June 2015, she took two checks from the law firm, made each payable to herself in the amount of $2500, forged an authorized signer's signature, and deposited

them in her TD Bank account. In July, defendant's employer discovered that she had stolen the two checks and reported the incident to the police. The employer also filed a claim with its bank, People's United (the bank), and the bank reimbursed the employer's account for the funds it had cleared through the employer's account pursuant to the forged checks. The bank reported that it had no insurance to cover this loss.

¶ 3. Defendant was arraigned on two counts of felony embezzlement in August 2015. In October, she entered a plea agreement with the State and pleaded guilty to one count of embezzlement; the State dismissed the other count. The court placed defendant on probation and deferred her sentence for three years.

¶ 4. At the restitution hearing, the bank sought restitution in the amount of $5000 to cover the loss it incurred as a result of these events.[1] In its written decision, the court concluded that defendant must pay restitution to the bank. The court distinguished the bank from an insurer that could not receive restitution because the bank was "not in the business of taking payments in order to cover for the loss of others." It concluded that the bank was entitled to receive restitution because it "incurred a material loss as a direct victim." Defendant appealed.

¶ 5. The only issue on appeal is whether the bank in this case is a "victim" under Vermont's restitution statute. We review without deference the trial court's interpretation of the term "victim" as used in Vermont's restitution statute. See State v. Gorton, 2014 VT 1, ¶ 8, 195 Vt. 460, 90 A.3d 901. Citing to our prior precedent, defendant contends that the bank is not entitled to restitution because it is not a "direct victim" of the crime. She argues that the bank only incurred harm due to its relationship with her employer, and thus the harm was an indirect consequence of defendant's actions. She also argues that the bank cannot receive restitution because it has alternative civil remedies.

---

[1] The employer also sought restitution for various expenses apart from the actual embezzled funds. We do not elaborate because defendant does not challenge the trial court's rulings concerning restitution to the employer.

2

¶ 6. We conclude that the bank was a direct victim and affirm the trial court's restitution order. Even though Vermont's restitution statute defines "victim" narrowly, in this case, as a result of its own legal obligations relative to the forged checks, the bank was harmed financially as a direct result of defendant's crime. The cases relied upon by defendant do not persuade us otherwise, as the bank here was harmed as a direct result of defendant's crime, and the bank is not an insurer. The availability of civil remedies to the bank likewise does not undercut the applicability of the restitution statute.

¶ 7. We note at the outset that our restitution statute is drawn narrowly. Pursuant to 13 V.S.A. § 7043(a)(1), the trial court is to consider restitution "in every case in which a victim of a crime . . . has suffered a material loss." Section 5301(4) defines victim as "a person who sustains physical, emotional, or financial injury or death as a direct result of the commission or attempted commission of a crime." "The Legislature's use of the words 'direct result' indicates that it intended to provide restitution only to direct victims of crime." State v. Thomas, 2010 VT 107, ¶ 17, 189 Vt. 106, 14 A.3d 961. Thus, Vermont's restitution statute "has a narrow definition of victim" as compared to other states' statutes. Id.

¶ 8. Even with this narrow definition, as a result of its own legal obligations, the bank in this case was directly harmed by defendant's crime. A bank may not charge a customer's account for a check that is not properly payable, and because a forged check is not properly payable, the bank is therefore obligated to reimburse the account if it pays out a forged check. See 9A V.S.A. § 4-401(a); J. Walter Thompson, U.S.A., Inc. v. First BankAmericano, 518 F.3d 128, 132 (2d Cir. 2008) ("In most cases, a drawee/payor bank is strictly liable for charging its customer's account for a forged or altered check pursuant to Section 4-401"); Braden Furniture Co., Inc. v. Union State Bank, 109 So.3d 625, 630 (Ala. 2012) (explaining that under the UCC, "if a drawee bank debits a drawer's account for an improperly payable item, the drawee bank is obligated to recredit the drawer's account"); Monreal v. Fleet Bank, 735 N.E.2d 880, 881-82 (N.Y. 2000) (citing § 4-401 for proposition that "[a] check bearing a forgery of the customer's signature

3

is an 'item' not 'properly payable and therefore may not be charged against the customer's account"). Even though the money to pay the forged check was initially drawn from the employer's account, defendant effectively stole from the bank and not the employer because of the bank's obligation to reimburse the employer for the money paid pursuant to forged checks.

¶ 9. In that respect, State v. Thomas, relied upon by defendant, is readily distinguishable. 2010 VT 107, 189 Vt. 106, 14 A.3d 961. In that case, the defendant was convicted of aggravated assault. The victim sought treatment at a hospital, and the trial court ordered the defendant to pay restitution to the hospital for an outstanding bill that the victim did not pay. We reversed the trial court's order, noting that the restitution statute defined "victim" narrowly and concluding that the hospital's financial injury was only an "indirect result" of the defendant's crime. Id. ¶ 17. Therefore, the hospital was not a direct victim and could not receive restitution. Id. In Thomas, the hospital's harm was indirect because it was the result of the victim's failure to pay an outstanding bill, and not directly because of the defendant's actions. Unlike the hospital in Thomas, the bank in this case suffered direct, not "consequential," harm, and "there is a direct link between the crime and the restitution." State v. Forant, 168 Vt. 217, 223, 719 A.2d 399, 403 (1998).

¶ 10. Nor does our decision in State v. Webb undercut our analysis. 151 Vt. 200, 559 A.2d 658 (1989). In Webb, the defendant was convicted of driving under the influence. The trial court ordered the defendant to pay restitution to the insurance company that insured a building that the defendant damaged during the commission of the crime. We reversed, reasoning that the Legislature did not intend for the term "victim" to be interpreted so broadly, and concluded that restitution "may not include payments to insurers of direct victims." Id. at 202, 559 A.2d at 660.

¶ 11. Defendant's argument fails for two reasons. First, the bank is not an insurer. The bank does not accept a premium in exchange for assuming the risk of fraudulent withdrawals. Other courts have rejected this argument for the same reason. See People v. Saint-Amans, 32 Cal.Rptr.3d 518, 524 (Cal. Ct. App. 2005) ("The bank did not insure [the victim's] account against

4

the risk of appellant's crime, receive compensation for doing so, or contract to assume economic liability for appellant's crime"); State v. Hennenfent, 490 N.W.2d 299, 300 (Iowa 1992) ("[Banks] are not in the business of insuring against anticipated risks, and they are not compensated for assuming such risks. Nor did they voluntarily contract with [the victim] to assume liability for the damages arising out of [the defendant's] criminal misconduct."); State v. Poole, 279 S.W.3d 602, 607 (Tenn. Crim. App. 2008) ("The bank was not an insurer in the present case; it did not insure the account against the risk of the [d]efendant's crime, receive compensation for doing so, or contract to assume economic liability for the [d]efendant's crime."). Although the courts in these jurisdictions interpret their restitution statutes more broadly than we do, their understanding of whether a bank is an insurer is unrelated to their definition of "victim," and as such their reasoning is persuasive.

¶ 12.    Second, even if the bank had acted as an insurer, this case would be more analogous to State v. Bonfanti, 157 Vt. 625, 603 A.2d 365 (1991). In Bonfanti, the defendant was convicted of arson after he burned down his own building. The trial court ordered him to pay restitution to the insurance company that paid off his mortgage. We affirmed. We explained that the holding in Webb did not mean that insurance companies could never receive restitution, but instead that the insurer of a party directly harmed by a crime was not entitled to restitution because it was one step removed from the crime. Id. at 627, 603 A.2d at 366. We rejected the defendant's argument that the real victim of the crime was the bank that held his mortgage because the bank did not suffer any harm and the restitution scheme "assumes the 'victim' of a crime suffers some sort of wrong for which restitution compensates." Id. at 628, 603 A.2d at 367 (citation omitted). Furthermore, "[t]he nature of the arrangement between the insurance companies, the mortgage holder and defendant was that if a fire occurred, the insurance companies, not the bank, would absorb the loss." Id. at 628, 603 A.2d at 367. Thus, the insurance company was entitled to restitution as the direct victim of the crime.

5

¶ 13. In this case, the employer suffered only a temporary loss of the embezzled funds because the bank reimbursed it for the amount that it originally took from the employer's account to pay the forged checks. For that reason, the employer in this case would not be able to receive restitution for the embezzled money because it did not suffer "a material loss." 13 V.S.A. § 7043(a)(1). The relationship between the three parties in this case is similar to those in Bonfanti—the bank was positioned to absorb the loss when defendant deposited the two forged checks into her own account because the bank was obligated to refund the account. Restitution is appropriate in cases such as this one where defendant's crime directly harms the bank that must reimburse a customer's account for embezzled funds.

¶ 14. Lastly, we reject defendant's argument that the bank may not receive restitution because alternative civil remedies are available to it. We have established that "restitution is not a substitute for an award of civil damages." Forant, 168 Vt. at 225, 719 A.2d at 404. The test, however, for determining whether a party is a victim for the purposes of restitution is not whether they may pursue another remedy. The test is whether there is a "direct link between the crime and the restitution," and we conclude that the bank's harm is directly related to defendant's actions in this case. Id. at 223, 719 A.2d at 403.[2]

Affirmed.

FOR THE COURT:

_____

Associate Justice

---

[2] Although defendant briefly raised this argument regarding People's United's alternative remedies, the parties did not address the issue of how the relationship between the two banks may impact restitution. More specifically, the parties did not analyze whether TD Bank was obligated to refund People's United for the amount that defendant embezzled. Because this issue was not briefed, we do not address it.