NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2018 VT 73

No. 2017-075

| | |
|---|---|
| State of Vermont | Supreme Court |
| | |
| | On Appeal from |
| v. | Superior Court, Chittenden Unit, |
| | Criminal Division |
| | |
| Lucas Dwight | March Term, 2018 |

James R. Crucitti, J.

James Pepper and David Tartter, Deputy State's Attorneys, Montpelier, for Plaintiff-Appellee.

Matthew Valerio, Defender General, and Dawn Matthews and Joshua O'Hara, Appellate Defenders, Montpelier, for Defendant-Appellant.


PRESENT: Reiber, C.J., Skoglund, Robinson, Eaton and Carroll, JJ.


¶ 1. **REIBER, C.J.** Defendant Lucas Dwight appeals the trial court's restitution order requiring him to pay dental expenses resulting from defendant's conviction for simple assault. Defendant raises two main issues: (1) whether the court erred in awarding restitution for expenses that complainant's father paid on complainant's behalf; and (2) whether the ordered repayment schedule, which considered defendant's earning capacity, was impermissibly punitive. We affirm.

¶ 2. The following facts are undisputed. Connor Richards, a student at the University of Vermont, was assaulted in May 2016. He sustained substantial injury to his mouth, including losing four teeth. Defendant was charged with aggravated assault for the attack, which was later amended to simple assault pursuant to 13 V.S.A. § 1023(a)(1). In May 2016, defendant pled nolo

contendere to the charge of simple assault. The court entered a judgment of guilty and sentenced defendant to four to twelve months, all suspended except for three days on work crew, and defendant was placed on probation for fifteen months. The probation conditions included anger-management counseling, no contact with complainant, and restitution as ordered by the court.

¶ 3.    The court held two restitution hearings to determine the amount of restitution and defendant's ability to pay. See 13 V.S.A. § 7043(c) (requiring, when ordering restitution, court must hold hearing if parties contest restitution amount and make findings regarding restitution amount and defendant's ability to pay); 28 V.S.A. § 252(b)(6) (permitting court to order restitution as probation condition and requiring court to "fix the amount [of restitution] thereof, which shall not exceed an amount the defendant can or will be able to pay, and shall fix the manner of performance"). The court found that as of August 2016, the date of the first restitution hearing, complainant had incurred $21,441.15 in dental expenses due to the assault that were not covered by insurance or the State of Vermont Restitution Unit. Complainant's father paid for these expenses by credit card. Complainant's father "told his son that he would be required to make a choice—have his severely damaged teeth and gums repaired, or go to school." Defendant has taken out a $28,000 loan for school expenses, an expense previously paid for by his parents. The court ordered defendant to pay $21,441.15 in restitution to complainant.

¶ 4.    In assessing defendant's ability to pay, the court found that as of February 2017, the date of the second restitution hearing, defendant was a high school graduate with no college or trade school education. Defendant worked seasonally, mowing lawns in summer and snowplowing in winter. A paystub dated November 18, 2016, showed he earned $14.00 per hour, worked 35.25 hours per week, and earned a gross income of $493.50 per week, and his year-to-date earnings were $10,785.25. Defendant reported his monthly income was $1,012.00, and his monthly expenses were $1,155.00. The court noted that defendant "appears to be a very fit and healthy young individual" and that "defendant offered no reason why" he could not work forty

hours per week. The court calculated that if defendant worked forty hours per week at $14.00 per hour, he would earn $2,424.00 per month. If he earned the weekly wage on his paystub every week, he would earn $2,136.00 per month. The court concluded that defendant "should be required to work a standard work week in order to make the restitution amount meaningful," and "[g]iven the number of hours worked per week by the defendant and the absence of any reason for not working a standard work week, . . . the defendant is earning less than he could through reasonable effort." Relying on this calculation of defendant's earning potential, the court ordered defendant to pay $500 by March 1, 2017, $200 by April 1, 2017, and $200 by May 1, 2017. Starting June 1, 2017, defendant was required to pay $300 per month. Defendant timely appealed.

¶ 5. On appeal, defendant argues that because complainant's father paid the dental expenses, the loss was father's, not complainant's, placing it outside the reach of the restitution statute. He also argues that the purpose of restitution is to compensate the victim, rather than to punish the defendant, and the restitution payment schedule was unnecessarily and impermissibly punitive.

¶ 6. An order to pay restitution as a condition of probation falls within the sentencing discretion of the court. State v. Hughes, 2010 VT 72, ¶ 8, 188 Vt. 595, 5 A.3d 926 (mem.) (citing 28 V.S.A. § 252 and "noting that conditions of probation, including award and amount of restitution, lie within discretion of trial court"). Accordingly, "[w]e review restitution orders for an abuse of discretion." State v. Gorton, 2014 VT 1, ¶ 8, 195 Vt. 460, 90 A.3d 901. We will uphold the trial court's order unless "the trial court has withheld its discretion entirely or . . . it was exercised for clearly untenable reasons or to a clearly untenable extent." Unifund CCR Partners v. Zimmer, 2016 VT 33, ¶ 15, 201 Vt. 474, 144 A.3d 1045 (quotation omitted). To the extent the court's order relies on statutory interpretation or a question of law, we review the matter de novo. State v. Blake, 2017 VT 68, ¶ 8, __ Vt. __, 174 A.3d 126 ("When we review issues of law or engage in statutory interpretation" involved in restitution orders, "we do so de novo.").

## I. Expenses Paid by Father

¶ 7.     Our first question is whether the court erred in ordering defendant to pay restitution to complainant for the dental expenses when complainant's father, not complainant, paid the expenses. This is a question of law that we review de novo. Id.

¶ 8.     The restitution statute requires the court to consider restitution "in every case in which a victim of a crime . . . has suffered a material loss." 13 V.S.A. § 7043(a)(1). This statute is narrowly drawn. State v. Stewart, 2017 VT 82, ¶ 7, __ Vt. __, 176 A.3d 1120. "Victim" is defined as "a person who sustains physical, emotional, or financial injury or death as a direct result of the commission or attempted commission of a crime." 13 V.S.A. § 5301(4). The "direct result" requirement means that restitution is only available for "direct victims of crime." State v. Thomas, 2010 VT 107, ¶ 17, 189 Vt. 106, 14 A.3d 961 ("The Legislature's use of the words 'direct result' indicates that it intended to provide restitution only to direct victims of crime."). "Material loss" refers to "uninsured property loss, uninsured out-of-pocket monetary loss, uninsured lost wages, and uninsured medical expenses." 13 V.S.A. § 7043(a)(2). "[T]here must be a direct link between the crime and the restitution." State v. LaFlam, 2008 VT 108, ¶ 11, 184 Vt. 629, 965 A.2d 519 (mem.) (quotation omitted); see also State v. Baker, 2017 VT 91, ¶¶ 12, 14, __ Vt. __, 177 A.3d 1093 (explaining restitution statute requires criminal act to be proximate cause of material losses).

¶ 9.     There is no question that if complainant had paid the dental expenses directly, such as through a bank account or by a credit card in his name, then the expenses would qualify for restitution under the statute.[1] The dental expenses were incurred by the direct victim of the crime; they were proximately caused by defendant's criminal act; and the expenses meet the statutory

---

[1] At oral argument, defendant questioned whether complainant's dental expenses were "uninsured medical expenses," given that complainant's insurance company said the dental expenses were not medically necessary. This argument was not raised in the briefing, and we do not consider it here. See In re Boardman, 2009 VT 42, ¶ 20, 186 Vt. 176, 979 A.2d 1010 (per curiam) (explaining we will not consider issues not adequately briefed on appeal).

definition of a material loss. See 13 V.S.A. § 7043(a)(2) (defining material loss); cf. Stewart, 2017 VT 82, ¶ 6 (stating bank that reimbursed account holder for fraudulent check was "direct victim" of crime of embezzlement because it was "harmed financially as a direct result of defendant's crime"); Baker, 2017 VT 91, ¶ 20 (holding that negligent operation of car could proximately cause car damages, but did not proximately cause lost wages due to car co-owner's decision to leave work to help family deal with car accident); State v. Kenvin, 2011 VT 123, ¶ 13, 191 Vt. 30, 38 A.3d 26, overruled on other grounds by State v. Aubuchon, 2014 VT 12, 195 Vt. 571, 90 A.3d 914 (stating decedent was "sole victim of defendant's crime" of negligently operating vehicle, so decedent's medical expenses qualified for restitution, but family members' travel expenses for decedent's funeral did not).

¶ 10. The question is whether the fact that father paid for the expenses, rather than complainant, renders the dental expenses ineligible for restitution. It does not. The loss incurred was complainant's loss, not father's. Complainant incurred the dental expenses, and uninsured medical expenses constitute material losses without regard to who paid them or whether they have been paid at all. 13 V.S.A. § 7043(a)(2) (defining "material loss" to mean "uninsured property loss, uninsured out-of-pocket monetary loss, uninsured lost wages, and uninsured medical expenses"). The court did not err in ordering defendant to pay restitution for complainant's dental expenses.

## II. Repayment Schedule

¶ 11. Next we address the repayment schedule. First, we review whether it was within the court's discretion to consider defendant's future earning capacity in ordering restitution. This is a question of law that we review de novo. Blake, 2017 VT 68, ¶ 8. Second, we review whether the court abused its discretion in ordering this repayment schedule, specifically considering whether the repayment schedule was impermissibly punitive, as defendant asserts. Gorton, 2014

VT 1, ¶ 8; see also <u>Unifund CCR Partners</u>, 2016 VT 33, ¶ 15 (defining abuse-of-discretion standard).

¶ 12.   The restitution statute prescribes how a court orders restitution.  13 V.S.A. § 7043. Before issuing the restitution order, the court must make findings regarding the "amount of material loss incurred by the victim."  <u>Id</u>. § 7043(d)(1).  The court also must make findings regarding the defendant's "current ability to pay restitution, based on all financial information available to the court, including information provided by the [defendant]."  <u>Id</u>. § 7043(d)(2); see also <u>Kenvin</u>, 2011 VT 123, ¶ 16 (stating that restitution statute "mandates that the trial court determine whether a defendant will be able to pay the amount of restitution").  If the defendant "is unable to pay the restitution judgment order at the time of sentencing," the court is authorized to "establish a restitution payment schedule" for the defendant.  13 V.S.A. § 7043(e)(1).  This payment schedule should be "based on the [defendant's] current and reasonably foreseeable ability to pay."  <u>Id</u>.  In addition, a restitution amount that is a condition of probation "shall not exceed an amount the defendant can or will be able to pay."  28 V.S.A. § 252(b)(6).

¶ 13.   "The primary objective in interpreting statutes is to give effect to the intent of the legislature."  <u>State v. Jarvis</u>, 146 Vt. 636, 637, 509 A.2d 1005, 1006 (1986).  To understand the legislative intent, we "must examine and consider fairly, not just isolated sentences or phrases, but the whole and every part of the statute."  <u>Brown v. W.T. Martin Plumbing & Heating, Inc.</u>, 2013 VT 38, ¶ 20, 194 Vt. 12, 72 A.3d 346 (quotation omitted).  Where the statute's language is unambiguous, we "look at the plain, ordinary meaning of the statute" and "enforce the statute according to its terms."  <u>Blake</u>, 2017 VT 68, ¶ 8 (quotation omitted).  "We look also to other relevant or related statutes for guidance, because a proper interpretation must further the entire statutory scheme."  <u>Id</u>. (quotation omitted).

¶ 14.   We conclude that the Legislature intended the court to consider not only a defendant's immediate ability to pay, but also his or her earning capacity.  While the statute directs

a court to consider the defendant's "current ability to pay"—a focus on the defendant's current income, not future income or capacity for income—the statute also contemplates that the defendant may not be able to pay the restitution order immediately. 13 V.S.A. § 7043(d)(2), (e)(1). Where that is the case, the Legislature explicitly directed the court to establish a payment schedule based not only on the defendant's current ability to pay, but also on his or her "reasonably foreseeable ability to pay." Id. § 7043(e)(1). In addition, when ordering restitution as a condition of probation, the statute explicitly requires the court to determine what amount "the defendant can or will be able to pay." 28 V.S.A. § 252(b)(6). Thus, the statutory language indicates a restitution payment order does not necessarily have to be based only on the income a defendant actually is earning at the time of the sentencing hearing. On the contrary, the Legislature directed the court to base that order in part on a defendant's earning capacity—the defendant's "reasonably foreseeable ability to pay" and the amount "the defendant can or will be able to pay." 13 V.S.A. § 7043(e)(1); 28 V.S.A. § 252(b)(6).

¶ 15. Other state courts have interpreted similar restitution statutes in the same way. Alaska's courts interpreted a statute that required courts to " 'take into account the financial resources of the defendant' " as demanding "inquiry" into defendant's "past earning capacity and potential in the future as a wage earner, based on her experience, training, and any other relevant factors." Karr v. State, 686 P.2d 1192, 1197 (Alaska 1984) (quoting Alaska Stat. § 12.55.045(a) (1980))[2]; see also Bain v. State, 642 So. 2d 578, 580 (Fla. Dist. Ct. App. 1994) (basing restitution order on defendant's work history, earning capacity, and professional licenses, rather than her current unemployment, in keeping with Florida restitution statute that required courts to assess " 'the present and potential future financial needs and earning ability of the defendant' " (quoting

---

[2] The Alaska legislature amended this statute in 1992 to take out the "financial resources" clause and add a clause authorizing the court to take into account the defendant's "present and future ability to pay." 1992, Alaska Sess. Laws No. 71, §§ 3-4.

Fla. Stat. § 775.089(6) (1993)); State v. Cottrell, 271 P.3d 1243, 1247, 1253 (Idaho Ct. App. 2012) (affirming that statute requiring court to consider " 'financial resources, needs and earning ability of the defendant' " permitted courts to "fashion a restitution award based on contemplation of future earning capacity regardless of the earning capacity or assets of the defendant at the time of the restitution award" (quoting Idaho Code § 19-5304(7)); State v. Meeks, 415 P.3d 400, 404 (Kan. 2018) (interpreting statute that requires restitution unless shown to be " 'unworkable' " as authorizing courts to consider "present and future earning capacity" (quoting Kan. Stat. Ann. § 21-6604(b)(1)).[3]

¶ 16.   Further, implicit in the court's authority to order restitution is the court's authority to address whether it is reasonable to expect the restitution order will be carried out, including the power to consider the defendant's reasonably foreseeable earning capacity. See In re Girouard, 2014 VT 75, ¶ 12 n.2, 197 Vt. 162, 102 A.3d 1079 (stating "court also has inherent authority to ensure compliance with its own decree"). Otherwise, such a result would "deprive" the restitution judgment "of much, if not all, of its force" and "frustrate the larger purpose of ensuring that courts have the power to enforce their own valid orders to avoid unjust results." Aither v. Estate of Aither, 2006 VT 111, ¶¶ 9-10, 180 Vt. 472, 913 A.2d 376 (addressing court's jurisdiction to enforce order arising in divorce proceeding after abatement); cf. Blake, 2017 VT 68, ¶ 11 (stating that statute "would lose significant meaning" if the court had authority to "raise the theoretical possibility of restitution" but was unable to order restitution because of victim's release of right to restitution).

---

[3]   The dissent argues that these cases either undermine our analysis or fail to support it. Post, ¶ 28.   We acknowledge that some of these cases construed statutes that more explicitly authorized the court to consider earning capacity. See, e.g., Bain, 642 So. 2d at 580. But other cases relied on statutes with less explicit authorization. See, e.g., Meeks, 415 P.3d at 404. While these statutes are not identical to Vermont's, they are similar, and the courts interpreted them in a similar way as we do here.

¶ 17. The dissent suggests that in affirming the court's authority to consider a defendant's reasonably foreseeable earning capacity, we hold that the court has equal power to impute income in the restitution context that it holds in the child-support context. See 15 V.S.A. § 653 (authorizing court to consider "the potential income of a parent who is voluntarily unemployed or underemployed" when ordering child support). We do not. We hold here that when the statute authorizes the court to consider a defendant's "reasonably foreseeable ability to pay," this includes a defendant's reasonably foreseeable earning capacity. As in this case, a defendant's reasonably foreseeable earning capacity includes the income the defendant could earn at the same rate of pay the defendant currently receives if she or he were working full time in the occupation in which she or he is already employed. Whether that authority extends any further—such as to holding a defendant responsible for higher wages than she or he earns based on a credential for a higher-paying profession in which the defendant is not currently employed—we do not decide.

¶ 18. Having addressed as a matter of a law whether the court may consider a defendant's earning capacity in ordering restitution, we review whether the court abused its discretion in ordering this restitution payment schedule. See Unifund CCR Partners, 2016 VT 33, ¶ 15. We conclude that the court did not. The record supports the court's findings regarding defendant's current ability to pay and what he could pay if he worked full time at his current rate. Basing the restitution payment schedule on those findings is reasonable and is not an abuse of discretion.

¶ 19. Defendant argues that in this case, the court's assessment of ability to pay was unnecessarily and impermissibly punitive. "The purpose of restitution is to compensate the victim, rather than to punish the defendant." State v. Bohannon, 2010 VT 22, ¶ 6, 187 Vt. 410, 996 A.2d 196. "But restitution, as part of sentencing and in terms of its effects and consequences, is not purely compensatory." Blake, 2017 VT 68, ¶ 16. Restitution furthers the criminal justice goals of rehabilitation and deterrence. Baker, 2017 VT 91, ¶ 12 ("[W]hen restitution is ordered, it addresses, to some degree, the goals of sentencing and, more broadly, criminal justice. Those

9

goals include rehabilitation and deterrence."); see also <u>Meeks</u>, 415 P.3d at 404 ("In all circumstances, the district court should keep in mind the ultimate goals of restitution: compensation to the victim and deterrence and rehabilitation of the guilty.").

¶ 20.   Here the trial court found that if it based the restitution payment schedule on defendant's current ability to pay, without considering his earning capacity, it would take defendant twelve years to repay the victim.   The court did not find this acceptable, given complainant's loss and defendant's earning capacity.   The court concluded that "the defendant should be required to work a standard work week in order to make the restitution amount meaningful."   Defendant understands this language to indicate the court's intention to punish him through "meaningful" restitution.[4]   We understand this language to indicate the court's intention to ensure defendant pays restitution within a reasonable period of time.   This reasoning is fully consistent with the rehabilitative and deterrent goals of restitution, and it is not punitive.   See <u>State v. Breeden</u>, 932 P.2d 936, 939 (Idaho Ct. App. 1997) ("A restitution requirement facilitates rehabilitation by confronting the defendant with the consequences of his or her criminal conduct . . . [and] promotes public safety by exacting a price for the crime, which may deter the defendant and others from such offenses.").

¶ 21.   We conclude that the court did not err in awarding restitution for expenses that complainant's father paid on complainant's behalf.   We also hold that it is within the court's

---

[4]   Defendant also focuses on the fact that prior to the second restitution hearing, defendant and the State agreed that $150 per month was a reasonable monthly amount, given defendant's financial situation.   However, the State made clear that although it found $150 per month reasonable, complainant did not; therefore, the State was not asking for, nor had it agreed to, $150 per month.   The State then asked for a $300 monthly repayment at the second restitution hearing. Nothing about these facts indicates the court's decision to order $300 monthly payments was punitive.   Moreover, the authority to set a restitution repayment schedule rests with the court, not the parties.   Any agreement between the State and a defendant regarding a repayment schedule does not bind the court.

discretion to consider reasonably foreseeable earning capacity in determining an appropriate restitution schedule, and here the court's ordered schedule was not punitive.

Affirmed.

FOR THE COURT:

_____
Chief Justice

¶ 22.    **ROBINSON, J.**   I join in affirming the trial court's determination of the material loss subject to a restitution order, but respectfully dissent from the majority's conclusion that the Legislature has authorized courts to impute income to convicted offenders based on their potential earning capacity. I rest my analysis on the plain language of the restitution statute, the structure of the statute, the lack of connection between the compensatory and rehabilitative purposes of restitution and the majority's approach, the fact that the Legislature has expressly authorized such imputation in other statutes and has not done so here, and the nature of restitution hearings. Finally, even if the trial court had the authority to impute income, the evidence in this case does not support the court's assessment.

¶ 23.    The plain language of the restitution statute focuses on the defendant's actual, as opposed to potential, ability to pay. See State v. Brunner, 2014 VT 62, ¶ 11, 196 Vt. 571, 99 A.3d 1019 (explaining that, to give effect to intent of Legislature, "we first look at the plain, ordinary meaning of the statute" (quotation omitted)). The statute requires the court to make findings concerning the defendant's "<u>current</u> ability to pay restitution, based on all financial information available to the court." 13 V.S.A. § 7043(d)(2) (emphasis added). It directs the court to establish a restitution payment schedule "based upon the offender's <u>current and reasonably foreseeable</u> ability to pay." Id. §7043(e)(1) (emphasis added). The restitution order cannot exceed "an amount the defendant can or will be able to pay." 28 V.S.A. § 252(b)(6). Nothing in the language of the

11

statutes relating to restitution or probation conditions invite the court to impute earnings to a defendant based on what the defendant <u>could</u> earn through hypothetical employment.

¶ 24.    The structure of the restitution statute reinforces this conclusion. After restitution is ordered, and prior to sentencing, a court must order that the offender give the court "full financial disclosure," including copies of the offender's most recent tax returns.  13 V.S.A. § 7043(o).  The statute says nothing about disclosing educational background, physical limitations, or work search information—the kinds of data necessary to evaluate potential earning capacity.  Every restitution order must require the offender to keep the Restitution Unit notified of employment changes, <u>id</u>. § 7043(e)(2), and the sentencing court may modify the payment schedule of the order if warranted by a substantial change in circumstances, <u>id</u>. § 7043(l), reinforcing that it is the offender's actual employment status and earnings, rather than hypothetical potential employment earnings, that drive the restitution payment schedule.

¶ 25.    Neither the compensatory nor the rehabilitative purpose of restitution supports the majority's approach.  Insofar as the purpose of restitution is to compensate the victim, "a restitution order in a criminal case is not the same as, and is no substitute for, an award of damages" in a civil action.  <u>State v. Blake</u>, 2017 VT 68, ¶ 21, __ Vt. __, 174 A.3d 126 (quotation omitted).  A victim is free to pursue civil damages separate and distinct from any recovery received through a restitution order if the victim does not recover double damages.  <u>Id</u>. ¶ 21; see also 13 V.S.A. § 7043(h).  In fact, an offender's restitution payments are only loosely connected to actual compensation to the victim.  Pursuant to the court's restitution order, the Restitution Unit pays the victim consistent with applicable requirements and limitations.  13 V.S.A. §§ 5363, 7043(i)(1). An offender makes restitution payments to the Restitution Unit.  <u>Id</u>. § 7043(k).  Restitution payments from an offender, rather than from the Restitution Unit, only reach the victim if the Restitution Unit collects more than $10,000 from the offender.  <u>Id</u>. § 5363(e).  In this case, victim has received only partial reimbursement from the Restitution Unit; even with the court's aggressive

restitution payment schedule relative to defendant's actual demonstrated ability to pay, victim will not begin to receive any portion of defendant's payments, assuming he can make them, for more than five and a half years.[5] Victim's recourse for a timelier judgment for the full amount of his damages is a civil tort action.

¶ 26.   Imputing income in a restitution order is not a proper way to promote the rehabilitative purposes of restitution. We have recognized that the goals of restitution are not entirely compensatory and include rehabilitation. Blake, 2017 VT 68, ¶¶ 17-22. Imputing income or assets that a defendant does not actually have is essentially an employment requirement. The majority's conclusion that the court can impute income based on potential, as opposed to actual or expected earnings, allows an end run around the parameters we have established for probation conditions concerning employment, training, and work search. In evaluating a probation condition requiring an offender to regularly work at a job, look for work, or get job training if required by the probation officer, we have emphasized that such a condition must reasonably relate to the circumstances underlying the criminal conduct for which the offender was convicted or to helping the offender lead a law-abiding life in light of that crime. State v. Putnam, 2015 VT 113, ¶¶ 49-50, 200 Vt. 257, 130 A.3d 836. If a sentencing court can impute income for purposes of setting a restitution payment schedule, the trial court can effectively impose a work requirement without any such limitation.[6]

---

[5] If defendant's employment earnings increase, 13 V.S.A. § 7043(l), or defendant wins the lottery, receives a tax refund, or has unclaimed property in the custody of the Vermont Treasurer, id. § 7043(n)(1), victim may be repaid, at least in part, sooner.

[6] The majority's approach is at odds with the rehabilitative purpose of restitution for another reason: "If restitution is ordered in an amount that is clearly impossible for the offender to pay, the offender's rehabilitation will be inhibited and not furthered." Karr v. State, 686 P.2d 1192, 1197 (Alaska 1984).

¶ 27. Moreover, the Legislature has demonstrated that it knows how to authorize imputing income in an ability-to-pay determination, and has not done so here. See Town of Milton Bd. of Health v. Brisson, 2016 VT 56, ¶ 24, 202 Vt. 121, 147 A.3d 990 ("Where the Legislature has demonstrated that it knows how to provide explicitly for the requested action, we are reluctant to imply such an action without legislative authority." (quotation omitted)). In defining "gross income" for the purposes of calculating child support, the Legislature has included "the potential income of a parent who is voluntarily unemployed or underemployed, unless: (I) the parent is physically or mentally incapacitated; or (II) the parent is attending [vocational or job training]; or (III) the unemployment or underemployment of the parent is in the best interest of the child." 15 V.S.A. § 653(5)(A)(iii). Section 7043 uses no such language authorizing consideration of "potential income," nor does it specify protective limitations on the imputation of income to promote the best interests of a child or job training. Had the Legislature allowed such imputation in the restitution context, it would have said so; further, it would have provided some guidance as to how income may and may not be imputed.[7]

¶ 28. This is the reason several of the decisions relied upon by the majority undermine its analysis: in those cases, as in Vermont's child support statute, the legislatures did include language authorizing the imputation of income based on assessed earning capacity. For example, as the majority acknowledges, in Bain v. State the Florida Court of Appeals applied a restitution statute that expressly requires the court to consider "the present and future financial needs and

---

[7] I recognize that the majority does not take the position that the standards applicable to imputation of income in the child support context are fully applicable in restitution hearings. My point here is more basic: in the child support context the Legislature has expressly authorized courts to impute income and has provided some guidance as to how they should do so. The restitution statute contains no such language. And despite the majority's statement that it is not addressing whether a court can impute income in the restitution context due to underemployment relative to a defendant's qualifications, ante ¶ 17, the majority's broad construction of "ability to pay" to include a defendant's potential ability to pay if the defendant worked full time at an earnings level the court believes the defendant can attain implicitly answers that question in the affirmative.

14

earning ability of the defendant . . . " and places the burden on the defendant to demonstrate "the absence of potential future financial resources."  642 So. 2d 578, 580 (Fla. Dist. Ct. App. 1994) (quoting Fla. Stat. § 775.089(6), (7) (emphasis added)).  Similarly, the Idaho Court of Appeals applied a restitution statute that required a court to consider the "needs and earning ability of the defendant" in setting the amount of restitution.  State v. Cottrell, 271 P.3d 1243, 1247 (Idaho Ct. App. 2012) (citing Idaho Code § 19-5304(7)).  The statute, which appears to be directed at the establishment of a restitution amount rather than a payment schedule, specifically provides, "The immediate inability to pay restitution by a defendant shall not be, in and of itself, a reason to not order restitution."  Idaho Code § 19-5304(7).  These decisions reinforce that legislatures know how to expressly authorize consideration of an offender's potential earning capacity in setting restitution—and that the Vermont Legislature has not done so.[8]

¶ 29.    Finally, I don't believe restitution hearings, as currently constituted, are well suited to support an evaluation of a defendant's earning capacity.  As noted above, the pre-hearing discovery required of a defendant relates to financial disclosures.  Conclusions about an offender's potential ability to pay require consideration of a defendant's characteristics in relation to a job market.  If not established on the basis of a defendant's established earnings history, earning capacity determinations in this setting are apt to be highly speculative.

¶ 30.    This is a case in point.  Here, the trial court made a leap from the fact that defendant is able-bodied and young, to an assertion that he could work forty hours per week at his present

---

[8] Other cases cited by the majority don't undermine its position but also don't support it; the statutory language at issue in the various cases is sufficiently different from Vermont's that the courts' analyses are inapposite.  For example, the Alaska statute in effect at the time the Alaska Supreme Court decided Karr provided for consideration of the "financial resources of the defendant and the nature of the burden its payment will impose" on dependents of the defendant. 686 P.2d at 1196 (citing Alaska Stat. § 12.55.045(a) (1984)).  In State v. Meeks, 415 P.3d 400 (Kan. 2018), the court applied a statute that requires that a restitution plan be "workable," Kan. Stat. § 21-6604(b)(1), a broad and undefined term that has no analog in the Vermont restitution statute.

rate of $14 per hour, even though defendant has only a high school education and does landscaping work, which is weather dependent. The court's assumption that defendant could find additional work at the $14/hour rate to supplement or supplant these earnings was not based on any evidence in the record about other employment available in the local labor market that would provide full time work at a $14/hour rate; instead, the court assumed that defendant could and penalized him for failing to adequately rebut the court's presumption, saying: "The defendant offered no reason why he could not obtain a job which provides the opportunity to work a standard work week or why he would be unable to take a second job so as to work approximately forty hours per week." Even if the Legislature had authorized the trial court to impute income in setting a restitution repayment schedule, the record in this case does not support the trial court's assessment.

¶ 31.   For the above reasons, I dissent.


Associate Justice

16